No. 4.—Ezekiel A. Roberts, plaintiff in error *vs.* The State of Georgia, defendant.

[1.] The jury on the trial of indictment returned into Court and were called by the Clerk; one of them handed the indictment to the Sol. General, upon which a verdict of guilty was written, but not signed by any body—it was shown to the counsel for the prisoner, and they were asked if they desired to poll the jury, to which a negative answer was returned; it was then read in the hearing of the jury and ordered to be recorded—which was done: *Held*, that the prisoner was not entitled to a new trial on account of any irregularity in the verdict.

[2.] Upon the trial, the prisoner was represented by counsel, and to one of them was submitted the conduct of the examination of witnesses. After a full cross-examination of one of the witnesses for the State, by that counsel, the prisoner requested leave of the Court to cross-examine him, which was denied: *Held*, that this was no violation of the constitutional right of the prisoner to defend by counsel—in person—or by both.

Indictment for being a rogue and vagabond, in Monroe Superior Court. Tried before Judge STARKE, March Term, 1853.

The facts in this case are as follows: The defendant being indicted, and having plead, and being put upon his trial; during the progress of the cause, a witness of the State, named Simpson, being on the stand, and having been cross-examined by defendant's counsel, the defendant himself asked leave to cross examine him further, which the Court refused, and which is excepted to.

The case having been submitted to the jury, they retired to consider it. When they returned into Court, the list was called by the Clerk, and each juror answered to his name. They then handed in the following verdict: "We, the jury, find Ezekiel A. Roberts guilty." Not signed by any one. The indictment, with the verdict, was handed to prisoner's counsel, who were asked if they wished to poll the jury, and answered in the negative. The jury were then discharged and the verdict recorded.

Ezekiel A. Roberts *vs*. The State of Georgia.

Motions were then made, first in arrest of judgment, and afterwards for a new trial, on the ground, that no verdict had been rendered; and for a new trial, also, on the ground of error in the Court in refusing to permit the prisoner to cross-examine the witness, Simpson. Both which motions were overruled by the Court, to which defendant excepts and assigns error therein.

LAMAR, HAMMOND & LOCHRANE, for plaintiff in error.

GLENN, representing THRASHER, Sol. Gen. for defendant.

*By the Court.*—NISBET, J. delivering opinion.

[1.] The grounds relied upon in this bill, are not sufficient, either to arrest the judgment, or for a new trial. We have no Statute Law, prescribing the form of delivering the verdict of a jury. Our usage is to write the verdict on the indictment—which being signed by the foreman, is handed to the Sol. General in open Court after the jury has been called; and when publicly read, is recorded. This form is in substance that of the Criminal Law, and we cannot, advise any departure from it. Yet, when in substance and effect it is observed, even if there be a literal departure, we will not regard *that* as warranting a new trial, much less an arrest of judgment. In England the verdict is given in *orally*. The *oral* tradition grew out of the unclerkly character of jurors in early times. And now we see no objection to it, inasmuch as it is happily adapted to the free and uncontrolled expression of the mind of the jury, and affords, by reason of its openness and audibility, safe guarantees against conception in any form, or from any quarter. The Clerk then receives the verdict from the lips of the foreman and records it—being recorded, it is read to the jury and their assent invoked, and when that is given it stands. The form of procedure is as follows: The jury having returned into their box, the Clerk calls the jury each by his name, and then asks them whether they have agreed on

their verdict, to which they reply (if the fact be so) in the affirmative. He then demands who shall say for them, to which they answer, their foreman. This being done, he desires the prisoner to hold up his hand, and addresses the jury thus : " look upon the prisoner, you that are sworn ; how say you ; is he guilty of the felony whereof he stands indicted, or is he not guilty." He then writes the word *guilty* or not guilty, as the verdict is, after the words " po se " on the record, and again addresses the jury thus : "hearken to your verdict as the Court hath recorded it ; you say that A. B. is guilty (or not guilty) of the felony whereof he stands indicted, and so say you all." Assent being given, the verdict is delivered, (1 *Chitty's Crim. Law*, 518.) This process identifies the jury and the prisoner, and the offence—ascertains unanimity—and is a public and solemn promulgation of the finding. The foreman is the spokesman of the jury by their own election, and the usage of the Courts has given him legal sanction to his character as such. He who acts as foreman, is presumed to be *the* foreman by choice of the jury. In the case before me, the verdict was written on the indictment, but not signed—it was handed to the State's officer by one of the jury, after the jury was called. He was in that act to be recognized as the foreman. Whether he was or was not foreman, however, we hold to be unimportant ; for we do not think that the validity of the verdict depends upon the fact of there being a foreman to the traverse-jury at all. The verdict thus written was publicly read—read in the hearing of the whole jury. It was their act by assent, no objection being made to the verdict. The prisoner had the right to poll the jury—his counsel was asked, after seeing the verdict, if he desired to poll them, to which question a negative response was given. After it was read, and not until then, it was ordered to be recorded, and it appears on the record in immediate connection with the list of the jury, as the verdict of that jury in the case, which is also stated on the record. Without doubt, this record would fully sustain a plea of *autre fois convict*.

[2.] The prisoner was represented by counsel on the trial, and the examination of witnesses was conducted by one of them.

Ezekiel A. Roberts *vs.* The State of Georgia.

After a full cross-examination of one of the witnesses called for the State, the prisoner asked leave to examine him further, which was refused; and this is complained of as violating his constitutional right of defence by himself, his counsel, or by both. His right was not violated. He appeared in person and by his counsel. He was entitled to conduct the examination, and if he had asked leave to do so in the outset, the request no doubt, would have been granted. He did not think proper to make the request, but devolved that service upon his counsel. Having arranged with counsel, that one of them should conduct the examination, the Court held him to it. Had he not held him to it, he would have compromitted the order, decorum and efficiency of the Court. The presiding Judge in the Courts of this country, has the power to prescribe the manner in which business shall be conducted—a power which it is not absolutely certain, the Legislature can take from him, unless it is exercised in such way as to involve a deprivation of right. All rights in a Court of justice are of necessity, enjoyed through forms of procedure—indeed, the rules of the Court, and the ever-present power of the judge, to maintain order—to prevent unnecessary consumption of time, and to discipline the action of the Court in ways and at times, and under circumstances which do not admit (in a Judges opinion!) of specification, are indispensable to the fullest enjoyment of every right. What Judge *Starke* did in this case, was nothing more nor less than to enforce the usual rule of the Court, as *to the manner in which the prisoner should exercise his constitutional right of defence in person.* As well might he complain, that he was denied the right of trial by jury, because the Law prescribes the manner of summoning and selecting his jury.

The prisoner had a fair trial, and was justly convicted of being a "rogue and a vagabond." This question admits of profitable discussion, but as with some of our professional brethren, brevity is not only the test of wit, but also of learning. I will only add, that the judgment below is affirmed.