## CHAPMAN *v.* THE STATE.

1. It was error to admit in evidence, against one on trial for a criminal offense, a declaration made by his wife in his presence before the offense was committed, the same being offered as tending to show a threat on his part, when the language used by the wife was not affirmatively approved

by him, and was not such as to call for a disclaimer by him of any crim-
inal intent or purpose.

2. When the evidence as to threats introduced on the trial of one charged
   with a crime is by no means clear or satisfactory, it is error for the court
   to instruct the jury that evidence has been introduced "tending to show
   threats."

3. After specifying the three statutory methods prescribed in the code for
   impeaching witnesses, it was error for the court to instruct the jury that it
   was their duty to believe a witness who had not been impeached by some
   of these designated methods, there being other legal ways in which a
   witness may be discredited.

4. In the trial of a criminal case where the State relied upon evidence of
   an accomplice and claimed that it had been corroborated, it was error for
   the court to charge the jury as follows: "Slight evidence that the crime
   was committed by the defendant and identifying him with it will corrob-
   orate the accomplice and warrant a finding of guilty."

5. The grounds in the motion for a new trial not dealt with above are with-
   out merit, there being no error of law committed except as above
   indicated.

Argued October 3, — Decided November 1, 1899.

Indictment for arson.    Before Judge Russell.    Hall superior
court.    June 19, 1899.

*Estes & Jones, W. B. Sloan, J. C. Boone,* and *B. H. Hill,* for
plaintiff in error.

*W. A. Charters,* solicitor-general, and *Dean & Hobbs,* contra.

Lewis, J.    The plaintiff in error was placed on trial in Hall
superior court, under an indictment containing two counts, the
first charging him and one Reuben Priest as principals in the
commission of the offense of arson by burning a millhouse not
situate in a city, town or village; the second count charging
plaintiff in error as being an accessory before the fact to said
offense, alleging that he had procured and counseled Reuben
Priest to commit the offense of arson.    To this indictment the
defendant Reuben Priest pleaded guilty, and Tom Chapman,
the plaintiff in error, was placed on trial under the issue
formed by his plea of not guilty.    In the prosecution the State
relied for a conviction of Chapman upon the second count of
the indictment.    The jury returned a verdict of guilty, with
recommendation to mercy, and the defendant assigns error in
his bill of exceptions on the judgment of the court overruling

his motion for a new trial. The State relied upon the testimony of Priest for a conviction, claiming that it had been sufficiently corroborated by the facts and circumstances proved on the trial. Priest swore positively to a state of facts which, if true, fastened upon the accused the charge against him, of being accessory before the fact to the crime of arson. D. T. Quillian appeared as prosecutor. The house burned was on his plantation, and was alleged to belong to him and another. On the trial a witness for the State testified in substance that he was at the defendant's house a short while before the burning, and while sitting around the fire talking with reference to a prosecution for an illegal sale of liquor against the defendant, who was present with his wife, she remarked, "You will hear of Quillian's losing as much as we have by being prosecuted for selling liquor." This testimony was admitted by the court over the objection of defendant's counsel; and this is one ground of complaint in the motion for a new trial.

1. It is the policy of the law to receive with caution and care even a voluntary confession of guilt made by one charged with crime. Whenever it is insisted that the admission or confession of a party is to be inferred from his acquiescence by silence in the statements of others made in his presence, it is still more important that such testimony should be received with great caution. This is true when the statement directly and clearly charges a criminal offense or criminal purpose, and naturally calls for a denial on the part of the accused. It follows, from this caution with which the law declares the jury should receive such evidence, that unless the declarations of another naturally call for some reply from the accused, they should not be admitted at all. This principle is clearly recognized in the case of *Rolfe* v. *Rolfe*, 10 *Ga.* 143, and, as far as we have investigated, is recognized by all authorities on evidence, and by the adjudications of all the courts on the subject. See 1 Gr. Ev. (16th ed.) § 98 et seq.; 1 Am. & Eng. Enc. L. (2d ed.) 672–4, and numerous cases cited; Abbott's Trial Brief (Criminal Causes), §§ 651–2; Commonwealth v. Kenney, 12 Metcalf, 235, 46 Am. Dec. 672–4. In the case of Moore v. Smith, 14 Serg. & R. 392, Duncan, J., announcing the opin-

ion of the Supreme Court of Pennsylvania on this subject, says: "Of all evidence, loose, hasty conversation is entitled to the least weight." Applying this principle of law to the question of the admissibility of the wife's declaration in this case, we think the court erred in overruling the objections made thereto by counsel for the accused. The language used by the wife carries with it no definite or certain significance whatever. It is insisted in behalf of the State that it was susceptible of the construction that the accused would inflict some injury upon the prosecutor. The State claimed that the motive for the burning was revenge on account of a prosecution for an illegal sale of liquor against Priest and the accused on trial, and that the prosecutor, whose house was burned, and others, interested themselves in this prosecution. There may have been some ground of *suspicion* that the wife had reference to some injury that would be inflicted by her husband on the prosecutor, but this is not sufficient to construe his silence into an admission of any criminal intent on his part. The language itself has not necessarily such meaning. It might, with equal propriety, be insisted that the wife, in the hasty conversation around the fireside, was simply predicting that a loss would overtake the Quillians in the course of the dispensations of Providence, or that in a moment of excitement she thoughtlessly made the remark without having any definite idea herself of exactly what she meant. Even if she did entertain the idea of doing a wrong or of causing a loss to the prosecutor or his family, there is nothing in what she said, or under the circumstances in which her statement was made, which would lead to the inference that her husband entertained the same thought and reflection that was in his wife's mind. He was simply silent. We think there was nothing in what was said to naturally call for a denial on his part; for the language used did not necessarily imply anything that would tend to inculpate him with a criminal intent or purpose; and the admission of this testimony, therefore, was error.

2. Exception is taken in the motion for a new trial to the following charge of the court: "There has been some evidence allowed to go before you, tending to show threats." A fair

inference to be drawn from this expression is, that the language quoted had direct reference to the party on trial, and that the court meant there was evidence tending to show he had made threats.    We fail to find in the brief of evidence any testimony of a positive threat made by the accused either against the prosecutor or any one else.    As above indicated, the declarations made in his presence do not even tend to prove a threat. The only other testimony bearing upon the subject was that of a witness who presented to the defendant, before the burning, a petition for money to be paid one who lived on the prosecutor's land.    To this the accused replied that "he had got in some trouble and had money to pay out, and that corner had a good deal to do with the trouble, and they were going to be sorry for it."    While we think this testimony, in the light of the other evidence in the record, was properly admitted by the court, as being susceptible of the construction that the accused intended to do the prosecutor a wrong, yet it by no means necessarily required such a construction.    The words employed were uncertain in their meaning.    The accused may have had no reference to the prosecutor, and may not have contemplated the commission of any offense.    As to what he meant, in the light of other facts and circumstances in evidence, was purely a question for the jury.    Considering, then, the charge of the court complained of, in connection with all the testimony bearing upon the subject of threats by the defendant, it embodied an expression of an opinion by the court as to the weight of the evidence on this vital point in the case.    Section 4334 of the Civil Code makes it reversible error for a judge of the superior court in his charge to the jury to express or intimate an opinion as to what has or has not been proved.    The expression that there is evidence "tending to show" a given fact necessarily implies the idea that the testimony points to such a conclusion, at least to the extent of having a tendency to establish its correctness.    Counsel for the State contends that the words used by the court simply meant that evidence was introduced for the purpose of showing a threat.    We do not think this is at all a legitimate construction of the word "tending," as used in this connection.    The trial judge, in a note to

this ground of the motion, states that "the jury no doubt understood the court, from various things that occurred on the trial, to mean what he intended to say, 'for the purpose of,' instead of 'tending to.'" We see nothing in the record that would throw any different light upon the meaning of the charge excepted to than what would be implied from the ordinary meaning and acceptation of the terms used. It was earnestly insisted by counsel for the plaintiff in error that there was no evidence even tending to show any threat on the part of the accused. On the other hand it was contended that the evidence did tend to establish such a threat. The record itself indicates that this involved between the parties, to say the least of it, a debatable question upon a material fact at issue, the correct solution of which depended largely upon the proper construction to be given uncertain and ambiguous language admitted in evidence. We think, therefore, it was manifest error for the court to instruct the jury that the evidence tended to establish the particular theory of either party. The question might have been different had there been positive and uncontradicted evidence of a threat made by the accused. But in this case the most that could be contended for by counsel for the State was that the circumstances proved tended to show a threat by the accused, or a purpose on his part to wrong the prosecutor. The circumstances relied upon to sustain such a contention were of such a nature as to render plausible an argument to the contrary. In view, therefore, of the close issue of fact presented upon this particular branch of the case, we think any expression of the court as to what side of the issue the evidence tended to establish was, within the true spirit and meaning of section 4334 of the Civil Code, a clear intimation of what had or had not been proved. As above indicated, there is no positive proof of any threat in this case. All the evidence relied upon to sustain the theory of such a threat is purely of a circumstantial nature. As to what facts such circumstances tend to establish is always a question for the jury, and for the court to intimate what they tend to show in any given case we think clearly invades the province of the jury.

3. Error is assigned in the motion for a new trial upon the

charge of the court to the effect that witnesses "are to be believed unless they are impeached by some method known to the law." The court then enumerates in the charge excepted to the three methods provided by law for impeachment of witnesses, namely: "First, by disproving the facts testified to by a witness. Second, by proof of contradictory statements, the attention of the witness being first called to the time and place, etc. Third, by proof of general bad character, as where witnesses appear and testify that the character of a witness is bad, and they would not believe him on oath." To this charge the court added, "Unless impeached by some of these methods, it is the duty of the jury to believe a witness." While it is true the court pointed out in his charge the only methods indicated by the statute for the impeachment of witnesses, it does not follow that unless he has been impeached by one or more of these methods the jury can not discredit the witness for other reasons not contemplated by the statute on the subject of formal impeachments; for instance, the feelings or prejudices of the witness either for or against the parties litigant, the reasonableness or unreasonableness of his tale, his manner of testifying, and many other things may be considered by the jury in passing upon his credibility. A witness, for example, may testify to a state of facts the happening of which any person of ordinary intelligence would know to be physically impossible. Although no effort might be made to impeach such a witness in any one of the three methods above prescribed, yet no one would contend that a jury would be compelled under the law to believe a narrative bearing a falsehood upon its face. While the statute prescribes but three methods of impeachment, it clearly does not mean thereby that for no other reason can a witness be discredited. This is too well established by legal principles relating to the credibility of witnesses, and especially the power given by the law to the jury in passing upon the weight to be given human testimony, to require further argument. We do not think there was any intention of this court to declare a contrary principle in the case of *Jones* v. *State*, 48 *Ga.* 163. In that case, as it appears from page 164, the charge of the court below to this effect was sustained: "That

every witness in the case is to be believed until impeached in some one of the modes known to the law. A jury can not arbitrarily, of their own motion, set aside the evidence of any witness; the presumption of innocence attaches to witnesses, which remains until removed by proof." We think the language in that case clearly needed a qualification to make it strictly accurate, but, in the light of its facts, it evidently worked no harm to the complaining party, and was, therefore, not reversible error. The language in this case is quite different in that the judge specified the three methods of impeachment prescribed in the code, and charged that unless a witness was impeached by one of those methods, it was the duty of the jury to believe him. There is nothing in the *Jones* case, in the light of the qualification that the judge gave his charge to the effect that the jury could not arbitrarily, of their own motion, set aside the evidence of a witness, which would authorize the conclusion that this court ever intended to rule that a jury could not discredit a witness unless there had been a formal impeachment of him by methods prescribed by the statute. While the charge of the court complained of is not correct as an abstract proposition of law, we do not mean to say that, were it the only error of law committed, it would necessarily work a new trial in this case, for, in another portion of the charge, the court very fully and fairly stated to the jury what other circumstances or facts they might consider in passing upon the credibility of witnesses; for instance, their manner upon the stand, their bias or prejudice, their interest or feeling in the case, their opportunity for knowing the facts about which they testified, etc. In the light of these further instructions, we doubt very much whether the charge complained of misled the jury. It should not, however, have been given without, in the same connection, calling the attention of the jury to the means by which they might otherwise discredit a witness.

4. Another ground of the motion excepts to the following charge of the court : "Slight evidence that the crime was committed by the defendant and identifying him with it will corroborate the accomplice and warrant a finding of guilty." As

a proposition of law it is true that slight evidence corroborating the testimony of an accomplice may be sufficient to authorize a jury in finding the accused guilty. *Roberts* v. *State*, 55 *Ga.* 220; *Evans* v. *State*, 78 *Ga.* 351. But it does not follow that this was a proper instruction for the trial judge to give to the jury. The question as to whether or not there is sufficient corroboration of the testimony of an accomplice to produce conviction of a defendant's guilt is peculiarly one for the jury. If founded upon slight evidence of corroboration connecting defendant with the crime, as a matter of law the verdict would not be illegal as being contrary to evidence; and this is all the court meant by a declaration of the principle decided in the above-cited cases. But as to whether the corroborating evidence should be slight or strong in order to carry conviction of defendant's guilt to the mind of the jury is a question alone for them to decide. The use of the language in the charge above quoted may have had a tendency to mislead the jury by causing them to infer in this particular case that if the testimony of the accomplice was corroborated by any evidence, however slight, it was their duty to convict; especially as the court did not in the same connection caution the jury with the further instruction that such corroboration, whether in their opinion slight or strong, considered in connection with the other evidence, should be sufficient to satisfy the jury of the guilt of the accused beyond a reasonable doubt.

5. There are several other grounds in the motion for a new trial, complaining of errors of law committed on the trial of the case; but we do not see, after a careful review of them, that they present sufficient merit to authorize the consumption of any time or space in their discussion; especially in the light of the judge's explanatory notes attached to the motion. Except as hereinbefore indicated, there was no error of law committed that would require a new trial.

*Judgment reversed. All the Justices concurring.*