36857. HARRIS *et al.* v. THE STATE.

**396**

Decided September 19, 1957.

*Whitman, Whitman & Whitman,* for plaintiffs in error.
*George D. Lawrence, Solicitor-General,* contra.

CARLISLE, J.   Peter Wells, Wilkey Robbins, alias "Skeet" Robbins, Charlie William Robbins, alias "Cooter" Robbins, and James Harris, alias "Booster" Harris, were jointly indicted and charged with the offense of assault with intent to murder one Glen E. Gregory.   All of the defendants pleaded "not guilty," and Charlie William Robbins, having elected to sever was tried separately.   This case involves the trial of the three remaining defendants who were tried together.

On the trial the State relied on the testimony of one George Merritt to place the defendants on the scene of the crime and to prove a conspiracy among the defendants to commit the crime. His evidence showed substantially that the four defendants came by his house in Greene County on the night of the crime at about 9:30 and asked him to accompany them for a ride, that he went with them to a point near the beer joint operated by the victim on the Greensboro-Eatonton highway in Putnam County where the automobile which was owned and driven by Wilkey Robbins was stopped, and the defendants, Harris, Charlie William Robbins and Peter Wells, got out, took a shotgun and shells owned also by Wilkey Robbins and walked off through the woods toward the beer joint; that these three were gone from the car about an hour and while they were gone, the witness heard two shots about 15, 20, or 25 minutes apart, and after the second shot, the witness heard a car crank up and start off twice; that the three defendants who had gone off with the gun returned to the car with the gun and some beer.   This witness also testified that a few days thereafter the defendants procured him to go to Florida for a while and that he returned and the defendants sent him to New Jersey, but that he came back, and at the time of the trial was serving time on the "public works" after having

pleaded guilty of burglary in another case. This witness offered no direct testimony as to any conversation had among the defendants and himself while riding in the car prior to the shooting, and on cross-examination, and again on redirect examination he testified that he and Wilkey Robbins, who stayed in the car while the others went off in the woods toward the beer joint, did not know that the other three were going over there to rob and shoot Mr. Gregory, and that he and "Skeet" had nothing to do with the shooting and that while "Skeet" was doing the driving and while the gun belonged to him, that "Booster" was directing him where to drive and what to do.

The victim, Mr. Glen E. Gregory, testified that on the night of the shooting he had one white customer in his place when the defendant, Charlie William Robbins, came into his place along with a short, light-skinned negro and purchased some beer and left; that shortly thereafter one of them returned, purchased more beer and some crackers; that a few minutes thereafter the white customer left and he commenced locking up for the night; that as he was in the process of locking the back door of his place he was shot in the back with a shotgun by an unseen assailant; that he went back in his place, waited a while and then went to his house some distance away, procured a revolver and returned to lock up the store and on his way back from his house to the store with the revolver he tripped and fell discharging it; that he completed locking up and cranked up his automobile and drove up, stopped and picked up his wife in the driveway and headed off toward Eatonton to go to the hospital to be treated for his wounds.

The State's evidence further showed that a discharged shotgun shell of the size that fit the defendant Wilkey Robbins' gun was found some 45 feet from the back door of the store; that thereafter when said defendant was arrested, a gun which he identified as his was taken from his home and a similar shell was discharged from the gun by the State Crime Laboratory and the two shells were shown to have been fired in the same gun. The witness Merritt identified this gun which was in evidence on the trial as being the same gun taken from the car on the night of the shooting by the three defendants, Wells, Charlie William Robbins and Harris.

■ In their argument on the general grounds the defendants contend that Merritt, upon whose testimony the State relies to place the defendants at the scene of the crime, was an accomplice, and that therefore his evidence comes within the rule stated in Code § 38-121 to the effect that an accomplice's testimony must be corroborated by other evidence in order to prove a fact. However, the evidence fails to show that Merritt was an accomplice within this rule. A witness is an accomplice within the meaning of the term as used in the Code section relied on if he could have been indicted for the offense either as a principal or as an accessory. *Stebbins v. State,* 78 *Ga. App.* 534, 535 (51 S. E. 2d 592), and cit. One who conspires with others to commit a felony may be indicted and convicted as a principal even though the evidence shows that he was absent when the crime was committed. *Chambers v. State,* 194 *Ga.* 773 (22 S. E. 2d 487). " 'In criminal law, conspiracy is a combination or agreement between two or more persons to do an unlawful act, and may be established by proof of acts and conduct, as well as by direct proof or by express agreement.' *Bolton v. State,* 21 *Ga. App.* 184 (94 S. E. 95), and cit.; *Thomas v. State,* 56 *Ga. App.* 381 (2) (192 S. E. 659)." *Weeks v. State,* 66 *Ga. App.* 553, 555 (18 S. E. 2d 503).

While ordinarily the question of whether or not a conspiracy was entered into is a question of fact exclusively for the consideration of the jury (*Tanner v. State,* 161 *Ga.* 193 (11), 130 S. E. 64), this question, like other questions of fact, is subject to the scintilla rule, and unless there is some evidence to show a conspiracy, a conviction or a finding of fact which has as its basis a conspiracy ought not to be allowed to stand. In this case, the State introduced absolutely no direct evidence tending to show that Wilkey "Skeet" Robbins and Merritt participated in any conspiracy to rob or shoot Mr. Gregory, but, on the contrary, Merritt testified on cross-examination that neither he nor "Skeet" knew that the other defendants were going off in the woods to rob or shoot anyone. There is no evidence as to what, if any, conversation was had between the occupants of the automobile while traveling to the scene prior to the shooting, and the only evidence as to what was said after the three defendants returned to the automobile after the shooting was that some

remark was made to the effect that they wished they could have gotten "all that money" that they saw.

Under these circumstances, therefore, the evidence was not sufficient to show that Wilkey Robbins and Merritt participated in any conspiracy, and any circumstances revealed by the evidence which may be said to tend to show a conspiracy involving them must yield to the direct uncontroverted evidence of the witness Merritt that neither he nor Wilkey Robbins knew of the purpose of the other three defendants. For this reason, Merritt was not an accomplice under the evidence and his testimony was not subject to the rule of corroboration stated in Code § 38-121.

What has been said above with respect to the question of whether George Merritt was an accomplice applies also to the question of whether Wilkey Robbins was guilty of the crime charged. In order to convict one of a crime, all essential elements must be proved. Criminal intent is a necessary ingredient of a crime, and proof of that intent must be made just as proof of any other fact necessary to support the conviction must be made. *Springer* v. *State,* 102 *Ga.* 447, 451 (30 S. E. 971). As to Wilkey Robbins, there was no proof of criminal intent where the evidence failed to show that he actually participated in the commission of the felony, and where the only direct testimony on the question showed that he did not know that a crime was going to be committed or that he knew that one had been committed afterward. For this reason, the verdict of guilty as to Wilkey Robbins was not authorized.

As to the defendants James Harris and Peter Wells, it is sufficient to say that the testimony of George Merritt, when considered with all the other facts and circumstances in this case, was sufficient to authorize the jury to return a verdict of guilty of the offense charged.

■ George Merritt, a witness for the State, was exmained at length by the solicitor with respect to the actions of the defendants and their families in sending him first to Florida and later to New Jersey. In the course of his examination, the solicitor asked the witness whether or not he had ever seen the piece of paper which the solicitor apparently held in his hand. The witness testified that he had seen the paper and then was per-

mitted to testify that a sister of the defendant James Harris had given it to him before he was sent to New Jersey and that he was supposed to use it for a social security card. Counsel for the defendants interposed an objection on the ground that "it's not connected with the defendants," and "it's not connected in any way with the crime which is charged against these defendants." The witness then testified as to the presence of some of the defendants at the time the paper was given to him. Counsel for the defendants renewed his original objection and added the further ground that the defendants would have no way of knowing what the contents of the paper were and would have no way to deny or acquiesce in anything that would have been on the paper, and further on the ground that this testimony related to something that happened subsequently to the commission of the crime. After permitting the witness to further testify as to the circumstances under which this "piece of paper" was given to him, the court overruled the defendants' objection to the evidence.

From the state of the motion for new trial and from the state of the record, it is impossible for this court to ascertain whether this ground of the motion for new trial is meritorious. Nowhere in this ground of the motion for new trial, or attached as an exhibit thereto, is the substance or content of this document set out. While section 3 of the Act approved March 7, 1957 (Ga. L. 1957, pp. 224-233) makes it no longer necessary that each ground of the motion for new trial be complete and understandable within itself and has thereby eliminated the corollary proposition that a movant be required to set out in the ground of his motion for new trial the substance of the document complained of as having been erroneously admitted or that he attach a copy of the document as an exhibit to the motion; nevertheless, the requirement that where a ground of a motion complains of the erroneous admission of evidence, it must appear from the record that such evidence was in fact introduced, still obtains. *Darden* v. *State*, 208 *Ga.* 599 (1) (68 S. E. 2d 559); *Joyner* v. *State*, 212 *Ga.* 269, 270 (2) (91 S. E. 2d 607).

The reason for this conclusion is based on common sense. Where a ground of a motion for new trial complains of the admission of evidence this court cannot intelligently decide the

issue thus raised unless it can ascertain from the documents before it, either the record or the motion itself, just what the evidence was. In the instant case, it is impossible for this court to determine whether it was error to admit the "piece of paper" in evidence or not, or, if error, whether its admission in evidence was harmful to the plaintiff in error, since no copy of it appears in the record or elsewhere in the documents before this court, nor is there any summary of its contents set out in the motion or in the record.

■ The second special ground of the motion complains because the court permitted the State to elicit evidence from George Merritt to the effect that on a certain date he had burglarized a house at a time when a witness for the defendant had testified that he (Merritt) was at her (the witness's) house. Counsel for the defendants objected to this evidence on the ground that it had no connection with the defendants; that it related to testimony by the defendants' witness brought out by the solicitor on cross-examination, and that if it amounted to an attempt to impeach her, the solicitor had not laid the proper foundation for so doing.

This evidence was admissible for the purpose stated by the solicitor, that is, for the purpose of proving that the statements made by the defendants' witness were not the truth. Code § 38-1802; *Middle Ga. & Atl. Ry. Co.* v. *Barnett,* 104 *Ga.* 582 (1) (30 S. E. 771). It was not necessary for the solicitor to lay any foundation to impeach the witness under these circumstances. *Deaton* v. *Swanson,* 196 *Ga.* 833 (2) (28 S. E. 2d 126). Furthermore, this ground fails to show how or wherein evidence that the State's witness Merritt was guilty of another unrelated crime had any harmful effect with respect to the defendants. If such testimony had any harmful effect, it would seem that it would have been harmful with respect to the State's case rather than with respect to the defendants', since it might have tended to show that the witness upon whom the State relied rather heavily was guilty of another crime, but we fail to see how or wherein this could have been harmful to the defendants. Evidence which is not injurious or prejudicial to the defendant is not inadmissible merely because it might be irrelevant or imaterial. *Stanton* v. *Bank of Thomson,* 183 *Ga.* 489, 491 (2) (188 S. E. 702); *Weldon*

v. *Howard,* 45 *Ga. App.* 668 (1) (165 S. E. 763).

*Judgment affirmed as to the defendants Harris and Wells, and reversed as to defendant Wilkey Robbins. Gardner, P. J., and Townsend, J., concur.*