39372. KENT v. THE STATE.

DECIDED MARCH 15, 1962.

*Stevens & Stevens,* for plaintiff in error.

*Kenneth E. Goolsby, Solicitor-General,* contra.

JORDAN, Judge. 1. The evidence on the trial of this case was sufficient to authorize the jury to find that the defendant Kent and three other men had entered into a conspiracy to forge and pass checks, including the check set out in the indictment, in McDuffie County, Georgia. The State introduced numerous witnesses who testified as to the passing of various forged checks by one of the alleged co-conspirators and proof of the conspiracy or corrupt agreement itself was supplied by the testimony of Mrs. Florence Turpin, who was the wife of one of the alleged co-conspirators. In this connection Mrs. Turpin testified in part as follows:

"I was in McDuffie County on the day that the checks were written. I was at Buck Kent's cabin, the first one on this end next to his place. I had heard of Buck Kent before that time, but I didn't know him. I had heard William and Watson Powell speak of him. I knew them before this day. My husband and I were living in Augusta at that time, at 445 Greene Street. We stayed at a tourist cabin the night before the checks were written—no, we stayed at home the night before the checks were written. Right offhand, I can't recall whether we stayed at home that night or not. I know we didn't stay at home the night they was wrote in Swainsboro, and that's what I had got kind of mixed up, I reckon.

"We got to Buck Kent's place by Watson Powell coming to Augusta and picking us up. Watson Powell came to Augusta and picked us up and we went right to Buck's place; we did stay at home that night, because he came to Augusta after us. We were riding in a white '61 Chevrolet. We came from Augusta to Buck Kent's place. When we got there, Buck was there in the cabin, and William Powell was getting out of a Pontiac automobile. I don't exactly know the model of the Pontiac but it was a new looking car.

"I would say that State's Exhibit No. 10 that you hand me is the automobile that William Powell was riding in on that occasion. I would say that State's Exhibit No. 11 is the same car. It is my testimony that William Powell was getting out of the Pontiac automobile when we got there with Watson Powell. My husband, Hugh Turpin, and Watson was sitting in the front seat, and I was in the back seat. William Powell got the check machine out of the Pontiac and took it to the cabin. By check machine, I mean the payroll check machine that they used, that put this perforation on there, this part right there (indicating). William Powell took it in the cabin.

"When I got inside the cabin, Buck Kent was there. William went in just ahead of us, and then Watson, Hugh and myself went in. Hugh Turpin actually wrote the checks. That is my husband. He is the person I identified the picture of in the State's Exhibit there. Buck Kent told him to put Ed Cofer's name on it after he got over there, but William had done told him that that was probably who Buck would tell him to put on it, would be Ed Cofer. Buck Kent told Hugh Turpin to put that the checks were for automobiles.

"Hugh Turpin was in the restroom when he was writing the checks, and he had a board across his lap, his legs, you know. He was sitting like this (indicating). The check machine that they ran them through was sitting on the dresser in the cabin. In that room there was Buck Kent, William Powell, Watson Powell and myself, and Hugh Turpin was in the bathroom. I was sitting on the foot of the bed; he had a Hollywood-style bed. Buck was standing up by the dresser. Watson was sitting down somewhere, and William and Buck were standing up.

"As to whether Hugh Turpin brought the checks out of the bathroom to run through the machine, Buck Kent got them and he and William Powell ran them through the machine. My deceased husband actually wrote the checks. I heard signals being made up. William Powell and Buck Kent was talking, and William told Watson for him to go along, and as Turpin had cashed the checks and as he had come out of the store for Watson Powell to go in, and if they was making a phone call for Watson Powell to tip his hat. That would let Turpin know so he could

get away, you know, that they probably were calling the Law. It is true that Turpin was the one who was to go in and cash the checks. Buck Kent was to show them where to cash them."

Mrs. Turpin further testified in part with reference to events which transpired after the checks were allegedly passed as follows: "They had some money to divide. William Powell pulled some out of his pocket and throwed it on the bed. When they went to divide the money, I couldn't tell exactly how much it was, because I wasn't standing there counting it. Buck Kent, William and Watson Powell, and Hugh Turpin divided the money. . . This Pontiac automobile that I have identified here was in the operation. Hugh Turpin drove it the first time they left to cash the checks. He went in that and they followed him in Buck Kent's car. When we started to leave, William told Buck, said 'Wipe my fingerprints off that car, mine and Turpin's fingerprints off the car, and get rid of it.' He said they had a jug of gas setting in the car, to drive it off and take the cap off the jug, and roll the glass down a little ways and throw a match in."

While Mrs. Turpin was present when the alleged conspiracy was entered into and concealed the facts which she learned by her presence for a time, such action did not make her an accomplice as a matter of law as contended by the defendant's counsel. *Allen v. State*, 74 Ga. 769 (1) ; *Lowery v. State*, 72 Ga. 649. The question of the connection of the witness with the crime was for the jury which was properly charged on this issue by the trial judge. *Venable v. State*, 56 Ga. App. 366 (192 SE 646) ; *Hargrove v. State*, 125 Ga. 270 (1, 2) (54 SE 164). The general grounds of the motion for new trial are therefore without merit.

2. "A conspiracy may extend beyond the actual commission of the criminal offense charged. It may expressly or impliedly include such matters as concealing the crime, concealing or suppressing evidence, taking means to prevent or defeat prosecution, possession and disposition of the spoils—depending on the nature and extent of the agreement as expressly or impliedly entered into by the alleged conspirators." *Burns v. State*, 191 Ga. 60 (8) (11 SE2d 350). The direct and circumstantial evidence in this case was sufficient to authorize the finding that

the burning of an automobile allegedly used in the criminal transaction under investigation in an effort to conceal their crime was a part of the conspiracy entered into and executed by the defendant and the alleged co-conspirators. The evidence was further sufficient to authorize the inference that the abandoned and burned automobile found some 2 miles from the defendant's place of business was the one which had been used by one of the alleged co-conspirators in passing the forged checks. In this connection the testimony of the Sheriff of Johnson County that this burned automobile had previously been stolen in Johnson County, which was the home of two of the alleged co-conspirators, was relevant to the matter under investigation and was admissible even though it incidentally injected the existence of an extraneous crime into the case. *Goodman v. State,* 184 Ga. 315 (191 SE 117); *Fowler v. State,* 189 Ga. 733 (2) (8 SE2d 77); *Fowler v. State,* 82 Ga. App. 197 (2) (60 SE2d 473). Accordingly, special grounds 1 and 2 which contend that the trial court erred in admitting into evidence testimony regarding the burning of the automobile and the fact that it had previously been stolen are without merit.

3. It was incumbent on the trial judge in this case to instruct the jury that the defendant was being tried only for the offense charged in the indictment and that evidence as to the burning of the automobile and as to the other checks allegedly forged and passed was admitted solely for the purpose of showing the conspiracy. His instruction to the jury in this regard was not subject to the criticism that it was an expression of the court's opinion that the defendant was guilty of these other offenses. *Sheppard v. State,* 44 Ga. App. 481, 491 (162 SE 413). Special grounds 6 and 9 are therefore without merit.

4. Special ground 3 of the motion for new trial, complaining of the admission of certain testimony of a witness for the State, is without merit since the record discloses that the testimony was elicited from the witness while on cross-examination by counsel for the defendant. *Scott v. State,* 57 Ga. App. 187 (1) (194 SE 844).

5. It was not error to allow in evidence certain testimony by the Sheriff of Johnson County made for the purpose of cor-

roborating the testimony of another witness for the State even though such testimony incidentally and indirectly tended to show the commission of other forgeries in other counties of this State by one of the alleged co-conspirators. See *Green v. State,* 172 Ga. 635 (3) (158 SE 285). Special ground 4 is therefore without merit.

6. Special ground 5, which assigned error on the conditional admission in evidence of testimony of a witness for the State, subject to said testimony being connected up at a later stage of the trial, is without merit since no final objection or motion to exclude said testimony was made. *Cawthon v. State,* 119 Ga. 395 (7) (46 SE 897); *Quinn v. State,* 22 Ga. App. 632 (2) (97 SE 84).

7. The remaining special grounds, which assign error on two excerpts from the charge of the court, are without merit.

*Judgment affirmed. Nichols, P. J., and Frankum, J., concur.*