## 48745. MADDOX v. THE STATE.

CLARK, Judge.

Defendant was convicted of theft by taking in that he "did take one white face grade hereford steer between 600-700 lbs. weight, of the value of $200, the property of Charles Harp and J. B. Harp, with the intention of depriving said owners of said steer." The steer was killed by a .22 magnum caliber shot.

Defendant appeals on general grounds. He further contends his character was improperly put in issue. An additional error is averred on the basis that the transcript fails to show a jury verdict on the punishment phase of a sentence by the court.

Defendant in his unsworn statement denied any involvement, stating that he and a friend went coon hunting, became lost in the woods and upon finding a house requested a ride to town from the occupant, Clyde McDaniel.

State's witness Hogan, whose pickup truck was found in the pasture backed up to the dead steer and who

himself was found intoxicated on the nearby road, testified that defendant and another, both wearing handguns, had requested permission to use his barn to dress a steer and after doing so had suggested that Hogan come with them to pick up another steer that they had killed. Hogan's truck was used because it was airconditioned and Hogan drove under defendant's direction. Hogan in his own words was "pretty well lit," having drunk between a pint and a quart of vodka that day. Hogan thought they were going to a farm in Henry County defendant had previously mentioned as belonging to his aunt. Defendant and his companion left Hogan on the road while they went inside the field to get the dead steer. As the steer was heavier than anticipated, defendant returned for the truck leaving Hogan waiting on the road bank.

The owner of the dead steer stated, after discovering the steer dead but still warm, he had gone to the house to notify his son of the incident. He then returned to the pasture and finding the gate open blocked the gateway with his truck. He saw lights in the field, but waited until his son and the police arrived before entering the field.

There was no one at the truck or in the field when the deputies went out to check the truck. The dead steer was on the ground and Hogan's pickup truck was there with a barrel containing a cow's head and entrails.

McDaniel testified that when defendant appeared at his residence approximately one mile from locale of the dead cow Maddox was wearing a holstered pistol. Defendant stated to him he had become lost while fishing and requested a ride to town.

Hogan's wife delivered to the deputies defendant's shirt covered with bloodstains which were analyzed as those of a cow or deer and which contained a military pay voucher in defendant's name. She also stated she had bandaged a cut on defendant's hand. She corroborated Hogan's testimony to the point where the three left in Hogan's truck. A deputy corroborated the fact of defendant's hand having a cut at the time of the arrest.

Defendant's wife turned over a .22 regular caliber cylinder which is interchangeable with a .22 magnum caliber cylinder. The deputies had seen the cylinder in

defendant's trailer while executing a search warrant. The .22 magnum caliber cylinder and the pistol were not found. During the search the deputy also testified that he found what in his opinion was home processed meat in defendant's freezer.

1. Defendant was found guilty of theft by taking which is defined by Code Ann. § 26-1802 (a) as "A person commits theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of said property, regardless of the manner in which the property is taken or appropriated."

Hogan's testimony along with the other evidence which we have summarized supported the verdict. "After a verdict approved by the trial court, the evidence must be construed by this court in its light most favorable to the prevailing party with every presumption and inference being in favor of upholding that verdict. [Cits.]" *Green v. State,* 123 Ga. App. 286, 287 (180 SE2d 564).

2. Defendant contends Hogan was an accomplice and that the evidence lacks sufficient circumstances corroborative of Hogan's testimony as required under Code § 38-121. It should be noted that Hogan is not a codefendant, not having been indicted or tried with defendant. The applicable principles are stated in *Hargrove v. State,* 125 Ga. 270 (1) (54 SE 164) to be that "Neither the joinder of a witness in an indictment with the defendant, nor a plea of guilty entered by the witness, *necessarily* makes him an accomplice with the defendant so as to require corroboration of the witness' testimony on the latter's trial. It is for the jury, from a consideration of the testimony of the witness, wherein he admits his presence at the scene of the crime at the time of its commission by his codefendant, but denies any participation therein by him, and the plea of guilty entered by the witness, as well as any other relevant circumstance, to determine whether the witness was an accomplice of the defendant on trial." See also *Venable v. State,* 56 Ga. App. 366 (192 SE 646); *Kent v. State,* 105 Ga. App. 565 (125 SE2d 96).

Defendant contends that *Childers v. State,* 52 Ga. 106, supports his view and is determinative under the

facts in the case. However, in *Childers* defendant was "avowedly guilty" and was an accomplice as a matter of law. The facts sub judice do not support a finding that Hogan is an accomplice as a matter of law. Furthermore, Hogan did not admit guilt and in fact denies any knowledge of defendant's intent and actions. See *Harris v. State,* 96 Ga. App. 395, 398 (100 SE2d 120). Hogan testified that he thought they were going to the farm of defendant's aunt and that they told him to get out of the truck and wait (supposedly due to his intoxication) while they retrieved the steer. Therefore Hogan's status is a question for determination by the jury and the *Childers* case is not adjudicative.

"In *Chapman v. State,* 109 Ga. 157, 165 (34 SE 369), the Supreme Court said: 'The question as to whether or not there is sufficient corroboration of the testimony of an accomplice to produce conviction of a defendant's guilt, is peculiarly one for the jury.' In *Rawlins v. State,* 124 Ga. 31, 49 (52 SE 1), the court held: 'What shall be the extent of this corroboration is a question to be determined by the jury. It may be strong, or it may be slight; but in each case it must be of such character as to satisfy the minds of the jury as to the connection of the accused with the criminal enterprise.' " *Evans v. State,* 91 Ga. App. 819, 821 (87 SE2d 228).

3.   Defendant alleges that his character was put in issue when on cross examination of Hogan, the following colloquy transpired: "Q. What happened to the gun? Did he come back and get the gun? A. Well, I don't know whether it was him or not. Somebody broke in my house the following Monday and stole all my guns and his happened to be sitting there, a colored TV, and saddles." (T. 82). Defendant made no objection to Hogan's answer.

"In the first place, the evidence to which the motion relates was given by the witnesses in direct response to questions propounded by counsel for the accused during his cross examination of them; and it is a settled rule of practice in this state that, where counsel elicits testimony unfavorable to his client, he will not be heard to object to it, no matter how prejudicial it may be, if it is a direct and pertinent response to the question propounded. [Cits.]" *Thomas v. State,* 213 Ga. 237, 239 (98 SE2d 548).

The answer was responsive in that Hogan stated what happened to the gun and in answer to the second part of the question said that he did not know if defendant had taken the gun or not. Hogan did not specifically accuse defendant of the burglary. It was not Hogan but defendant, himself, in his unsworn statement who stated: "I sure wasn't going to Hogan's house, because Hogan had it in for me because he claimed that I was the one that broke in his house and stole my own shot gun and stole his guns out of it." (T. 122). Therefore this enumeration is without merit.

4. Defendant enumerates as error the failure of the transcript to show either the jury verdict or the sentence by the judge. "Verdicts acquire their legality from return and publication. [Cits.]" *Martin v. State,* 73 Ga. App. 573, 578 (37 SE2d 411).

The judge's order in denying the motion for new trial states: "As to special grounds 7 and 8, while the transcript does fail to recite the punishment fixed by the jury or the publication thereof, the indictment itself has the punishment written thereon by the foreman of the jury, and this Court knows, as a matter of fact, that said verdict and punishment was published in open Court by the District Attorney of the Griffin Judicial Circuit upon said verdict and punishment being returned by the trial jury, all in the presence of the Court. While it would have been proper for these matters to have been reported in the transcript, this Court knows of no reason why the failure of the transcript to reflect this matter would have any bearing whatsoever upon the validity of the conviction and, consequently, finds special grounds 7 and 8 to be without merit." (R. 3).

The failure to report the verdict and sentence was obviously due to inadvertence of the court reporter. The trial judge has stated what transpired in his order which is supported by the indictment bearing the foreman's signature and the punishment verdict on page 11 of the record. We analogize these circumstances to those set forth in Code Ann. § 6-805 (g) where it is stated that when the transcript is not available and a transcript is prepared from recollection, "in case of the inability of the parties to agree as to the correctness of such transcript,

the decision of the trial judge thereon shall be final and not subject to review. . ." This enumeration is without merit.

*Judgment affirmed. Hall, P. J., concurs. Evans, J., concurs specially.*

SUBMITTED NOVEMBER 6, 1973 — DECIDED MARCH 1, 1974.

*Joe R. Edwards, Robert L. Ridley,* for appellant.
*Ben J. Miller, District Attorney,* for appellee.

EVANS, Judge, concurring specially.

Under the new law, in felony cases in the event of conviction, the jury must return two verdicts. The first verdict is as to whether the defendant is guilty or not guilty. If the verdict is "guilty" then the jury must return and decide on the sentence. Code Ann. § 27-2534 (Ga. L. 1971, p. 902). The language of the statute is that "the jury shall retire to determine the punishment to be imposed. The jury shall fix a sentence within the limits prescribed by law." If the jury cannot agree within a reasonable time, the judge may fix the sentence.

Error is enumerated because the transcript does not show there was a jury verdict as to the punishment phase of the case. The record shows only one verdict, which is as follows, to wit: "We the jury find the defendant, Robert Eugene Maddox, guilty and fix a sentence of two years. This 7 day of December, 1971. Grady B. Stone, Foreman."

There is no contention that the judge imposed the sentence, because the jury failed to agree.

There is a plenitude of cases in Georgia holding that a verdict is not required to be *in writing and signed. Southern Express Co. v. Maddox,* 3 Ga. App. 223, 224 (59 SE 821); *Roberts v. State,* 14 Ga. 18 (1); *Harris v. Barden,* 24 Ga. 72; *Patterson v. Murphy,* 63 Ga. 281; *Avera v. Tool, McGarrah & Tondee,* 74 Ga. 398 (3); *Sullivan v. State,* 29 Ga. App. 377, 378 (115 SE 290). But not a one of these cases holds, and I can find none that holds, that a verdict of a jury *need not be in writing.* The above authorities simply hold that though the verdict is in writing, and unsigned, or perhaps unsigned and undated, these

deficiencies may be added later, or overlooked. But none holds that the deficiency of *not writing out the verdict* may be overlooked or corrected.

The question here is whether the above verdict can be construed to represent two separate findings by the jury, to wit: guilty in the first instance, and a later finding that the sentence shall be two years.

"Verdicts shall have a reasonable intendment, and shall receive a reasonable construction, and shall not be avoided unless from necessity." Code § 110-105.

It is more than a little difficult to construe the above verdict to be two separate findings, but in view of the last cited code section, and the explanation by the trial judge, I somewhat reluctantly concur in the judgment in this case.

But it would be a better practice hereafter to have the jury write two separate verdicts, to be signed by the foreman, in each case.