## CALLAWAY *v.* THE STATE.

1. Upon the subject of the necessity of corroborating evidence and circumstances where the testimony of an accomplice with corroboration is relied upon by the State for conviction, the court instructed the jury in substance that the corroborating evidence must be such as tends to connect the defendant with the perpetration of the crime and to show his participation therein. This was a correct charge upon this subject; and the court did not err in refusing to give a charge, requested in writing, which stated a rule upon this subject correctly (if properly considered), but with less precision and exactness than the rule stated in the charge.

2. There was sufficient evidence on the subject of the flight of the accused to authorize a charge upon that subject.

3. The other part of the charge excepted to states a principle of law substantially correct; and while the language employed is somewhat inapt, it did not obscure the meaning of the court, nor could it have misled the jury.

4. The evidence in the case was sufficient to authorize the verdict.

No. 2304. MARCH 16, 1921.

Indictment for murder. Before Judge Humphries. Fulton superior court. October 23, 1920.

*H. A. Allen,* for plaintiff in error.

*R. A. Denny, attorney-general, John A. Boykin, solicitor-general,* and *Graham Wright,* contra.

BECK, P. J. Marvin Callaway was convicted of the murder of Mack Herndon, and was recommended to life imprisonment in the penitentiary. He made a motion for new trial, which was overruled, and he excepted.

1. On the trial of the case the State relied upon the testimony of the accomplice who had been convicted of the crime with which the defendant was charged, and upon corroborating evidence; and the defendant's counsel at the trial in due time submitted to the court the following request to charge: "Corroborating circumstances must be such as, independently of the testimony of the accomplice, would lead to the inference of the guilt of the accused, and must

in some way connect the defendant with the criminal act. While it is true that the sufficiency of circumstances offered for the purpose of corroboration is a matter for determination by the jury, and the law can not lay down a rule to measure the extent of corroboration necessary, still, where the only witness in a felony case is confessedly an accomplice, the corroborating circumstances are not sufficient to dispense with another witness, unless they are such as to connect the defendant with the crime. It is not sufficient for a witness to corroborate as to time, place, and circumstances of a transaction, if there is nothing except the statement of the accomplice to show any connection of the prisoner therewith; and facts which merely place upon the defendant a grave suspicion of guilt are not sufficient. Whether offered as the sole proof of guilt or in corroboration of an accomplice, the general rule applies, that where circumstantial evidence alone is relied upon, it must be sufficient to satisfy the jury of the guilt of the accused to the exclusion of every other reasonable supposition." The court refused to give this charge, but did charge as to the necessity of corroborating evidence as follows: "Usually the testimony of a single witness is sufficient to establish a fact. There are certain exceptions in law to this rule. One of these exceptions obtains in cases of felony; and this is a felony charged against the defendant in this case. The jury would not be authorized to convict upon the testimony of an accomplice alone, unless that accomplice's testimony is corroborated by other evidence in the case, either direct or circumstantial. While it is true that the sufficiency of the circumstances for the purpose of corroboration is a matter for determination of the jury, and the law can not lay down a rule to measure the extent of corroboration necessary, still, where the only witness is an accomplice, the corroborating circumstances referred to must be such as to connect the defendant with the perpetration of the crime and tend to show his participation therein." This charge of the court states completely and accurately the rule as to the necessity of corroborating evidence where the testimony of an accomplice, with corroboration, is relied upon for conviction. The court had already charged the jury that where the evidence adduced by the State to show guilt was circumstantial in its character, before the jury would be authorized to convict "the proven facts must not only be consistent with the hypothesis of guilt, but should exclude every other reasonable hypothe-

sis save that of the guilt of the accused. . . In other words, where circumstantial evidence alone is relied on for conviction, if there is any reasonable conclusion to be drawn from such evidence consistent with his innocence, it is the duty of the jury to give the defendant the benefit of such conclusion and acquit him." This charge of the court upon the subject of circumstantial evidence, and the necessity for corroborating evidence before the jury could convict on the testimony of an accomplice, stated both rules correctly and completely. If the rule upon the subject of corroborating evidence, that " corroborating circumstances must be such as, independently of the testimony of the accomplice, would lead to the inference of the guilt of the accused, and must in some way connect the defendant with the criminal act," is a stronger rule in favor of the defendant and means more than the rule laid down by the court in the charge actually given, then the charge given by the court is the better rule. Because, if the expression, " corroborating circumstances must be such as, independently of the testimony of the accomplice, would lead to the inference of the guilt of the accused," means that they must be such as to lead conclusively to the inference of the guilt of the accused, then that rule is too strong in favor of the accused. It is probable that where the Court of Appeals and the Supreme Court have used and approved that part of the charge embodied in the written request, and now under consideration, they meant by it to state in different language the rule laid down in the court's charge; because, upon this subject, the case of *Childers* v. *State,* 52 *Ga.* 106, lays down the rule that has been followed in other decisions where the same subject is involved. There it is said: " The rule is and ought to be that *some facts* must be shown by other witnesses tending to show the guilt of the person on trial." And in the headnote in that case it is said, " that in a case of felony, where the only witness implicating the prisoners in the crime was himself avowedly guilty, the corroborating circumstances necessary to dispense with another witness must be such as go to connect the prisoner with the offense, and that it is not sufficient that the witness is corroborated as to the time, place, and circumstances of the transaction, if there be nothing to show any connection of the prisoners therewith, except the statement of the accomplice." The opinion in that case was agreed to by two Justices. Chief Justice Warner dissented, and in the course of an elaborate dissenting opin-

ion he said: " The statute does not require that the corroboration of the accomplice's testimony shall be restricted to any particular points in the case; and to what particular points shall the court restrict it? What shall be the extent of the corroborating circumstances? Shall the court confine it to the *corpus delicti*, or to the identity of the parties charged, or to the main elements which constitute the offense? If so, then there would be no necessity for introducing an accomplice in any case; the facts could be established without his testimony." But the rule laid down by the majority has obtained and now prevails. The language employed by Judge Mc-Cay in the *Childers* case in stating the rule is sometimes varied, but the language of that case is the best statement of the rule. And any language that is more favorable to the accused than that used in the *Childers* case is stating a doctrine more favorable to the accused than is sound. Besides, the court might well have refused to give the written request in charge, because it is in part clearly erroneous. In the request is embodied the following proposition of law: " Whether offered as the sole proof of guilt or in corroboration of an accomplice, the general rule applies, that where circumstantial evidence alone is relied upon, it must be sufficient to satisfy the jury of the guilt of the accused to the exclusion of every other reasonable supposition." Such a charge would have been manifest error, for it would have required that the corroborating evidence, if circumstantial in its nature (as it was here), should in itself be sufficient to exclude every other reasonable hypothesis than that of the defendant's guilt.

2. The court charged the jury upon the subject of the flight of the accused shortly after the commission of the crime charged. The correctness of the charge as a rule of evidence is not challenged, but its applicability is denied, movant contending that no evidence adduced upon the trial authorized the instructions upon this subject. The record does not support this contention, for it contains testimony of two police officers showing that on the day after the killing of Herndon search was made for the defendant in or near the City of Atlanta, and that he was not found. It was also discovered that on the day after the homicide he had gone to the naval recruiting office, where he had previously made application to be allowed to enlist, and there learned that his application had been refused; that shortly thereafter it was learned that the defendant was in

Monroe, Va., and a member of the police force of Atlanta went to Monroe and returned with the accused on September 13th, two weeks after the homicide. The officer testifying as to these facts testified further: " I asked him how many days it took him to make it over, and he said he made it pretty quick on account of some peach-train, or cattle-train, made it across pretty quick, that he was on that; while he was in jail he got out of his cage twice, he told me. . . Said he took a piece of steel out of his shoe here, told me how he done it. . . Said he made a key to the door, there was a padlock on it, and unlocked the door and came out." There was sufficient evidence on the subject of flight to authorize a charge on that subject. The weight of the circumstances was for determination by the jury.

3. The other part of the charge excepted to states a principle of law substantially correct; and while the language employed is somewhat inapt, it did not obscure the meaning of the court, nor could it have misled the jury.

4. The ground of the motion for new trial raising the contention that the evidence was insufficient to authorize the conviction is strongly urged in the brief and argument of counsel. The testimony of the accomplice was in part, that, on the same day as that on which the homicide was committed, he saw Callaway in the neighborhood of the factory, the exact situation being described by references to certain streets and bridges near the factory; that while he and the accused were waiting there they were joined by another person, Charles Powers; that the defendant handed the witness a piece of iron pipe, instructing him to strike an iron tank on a flat car as a signal if any one approached; that Callaway said he and Powers were going up to the factory to get a little money from the watchman, this place being about forty feet from the factory in which the decedent was watchman; that upon leaving the witness the accused and the other person. went up the railroad to the end of the Southern Furniture Company's building (the building in which the murder was committed) ; and that they took the inside of a fence near the factory and went to a certain window, and then went in. The witness states they were to give him a dollar apiece for watching. After they effected an entrance through the window, some one in the building holloaed, and the witness ran. Some one in the building said, " O, Lordy," and the witness ran up Marietta

street. The meeting of the three was about half past five or six o'clock in the evening. There was evidence to authorize a finding that the homicide took place between six and eight o'clock p. m. Witness saw the accused afterwards that evening at a show, and he had two five-dollar bills and five ones in money. In substance his testimony was, that he was an accomplice; that the accused met him at a place near the factory at about 6 o'clock in the evening; that he entered the factory building of the Southern Furniture Company with the express purpose of robbing the night watchman there; that soon after the accused and another party entered the factory through a window a voice was heard crying out; and that shortly thereafter the defendant was seen by the witness, the accomplice, to have a stated sum of money — fifteen dollars. Such facts proved by another than an accomplice would have authorized a conviction of the accused. But before the accused could be convicted upon this testimony, inasmuch as the witness was already proved to be an accomplice, corroborating evidence was necessary; and we must look to the testimony of other witnesses not connected with the crime to find this. It is shown by the testimony of other witnesses in the case that the accomplice, Berryhill, and the accused, Callaway, had both been employed in the factory of the Southern Furniture Co. They had left that employment some time before the commission of the homicide for which Callaway was on trial. Herndon was killed on the evening of Friday, August 29. On the Thursday before, the accused was seen in the factory, according to the testimony of a witness introduced by the State, making inquiries as to whether certain acquaintances of his were still in the factory or not, and making remarks which seem to have no particular significance; but he also inquired who was night watchman at that time, and was informed that it was Mack Herndon, a negro man, who is referred to in the evidence by some of the witnesses as "old man Mack," or "old man Mack Herndon." One of the witnesses testified that he was in his 60's or 70's; another witness stated that he was 50 or 60 years of age. The jury were authorized to find that he was an old negro man. On Friday evening the employees of the factory were paid off, and the jury might have inferred from this that the accused knew that this was the day on which the employees received their pay, and that therefore the night watchman would be in possession of some money. There was other evidence tending

to show that the accused contemplated leaving the city, had made application for enlistment in the navy, and went on the morning after the homicide to the recruiting office to know whether his application had been acted on, and there found that it had been refused. There is evidence of search made by police officers for the accused; that he could not be found about the city; his home was in the suburbs, and they went to his home, but were informed that he was not there. About ten days or two weeks after the homicide it was learned that he was in Monroe, Va. He had stolen a ride on a freight-train, and in that way made the trip to Virginia. He had a piece of iron in his shoe, according to his own statement, that he could use to pick a lock and escape from a jail. One witness stated that he saw the accused in the factory on Thursday before the crime was committed, and when the accused saw him, the witness, he turned back into another door. The statement of the accused is very meager. In the brief of counsel he is referred to as a 15-year old boy. One of the witnesses testified that he was 16 or 17 years of age. At any rate he was a mere youth. This fact, and the fact that the accused may have been laboring under embarrassment and excitement at the time of making his statement, may be considered in reading his statement. That statement in full is as follows: "Gentlemen, I used to live in Baxter, Ga., and I came from Baxter to Atlanta, and then my father had been dead seven years and I never have been to school much in my life; and this statement from Francis Berryhill, he said I would kill him if he swore against me. I didn't tell him nothing of the kind. Gentlemen, I didn't have anything to do with this killing, none whatsoever. Gentlemen, I am innocent of this crime. My aunt Claudia gave me twenty dollars, and I started for Washington and I got as far as Monroe, Va., and they caught me for hoboing and locked me up and kept me until the officers come and got me and brought me back to Atlanta. Gentlemen, that is all I have got to say." It is pertinent to observe that there is nothing in the statement to account for the whereabouts of the accused at the time the crime with which he was charged was committed. It will also be observed that he says in his statement that his aunt had given him twenty dollars and he started for Washington, and got as far as Monroe, Va. There was no evidence offered to show that the aunt referred to had actually given him the sum of money stated. The facts relied upon as corroboration

may be trifling when viewed by themselves and separately from the entire case; but the jury had the right to consider all the facts and to consider them in their relations one to another, and to determine whether or not, considering the facts and comparing them in their proper setting, under the evidence adduced, they tended to connect the defendant with the commission of the crime and were a sufficient corroboration of the evidence of the accomplice to authorize a conviction of the accused under the law as given them by the court.

*Judgment affirmed. All the Justices concur, except George, J., absent.*