1. The court charged: "The testimony of a single witness is generally sufficient to establish a fact. An exception to this rule is made in the case of a felony — and burglary is a felony — where the only witness is an accomplice; in such case corroborating circumstances may dispense with another witness. The corroborating circumstances referred to must be such as to connect the defendant with the perpetration of the crime, and tend to show his participation therein." This rule, so charged, has been well settled since the decision in Childers v. State, 52 Ga. 106. It was applicable to the evidence, and there was no error in so instructing the jury.
2. The charges on flight and on the rule relative to recent possession of stolen goods, alleged to have been found in the hands of one charged with burglary, were each correct in the abstract and were authorized by the evidence. There was no error in so charging for the reasons assigned
3. The evidence authorized the verdict, and the court did not err in overruling the motion for a new trial.
 DECIDED OCTOBER 22, 1948. REHEARING DENIED DECEMBER 15, 1948.
Homer Blakely was tried and found guilty under an indictment for burglary. To the judgment of the trial court overruling his motion for a new trial, which contained the general and three special grounds, he excepts and assigns the same as error.
E. A. Rusk, proprietor of Rusk Motorcycle Company in Columbus, Georgia, was placed on the witness stand by the State, and testified that on October 21, 1946, his place of business was broken into and entered by burglars who cut a hasp on the back door, and a safe containing $17,000 in cash and $13,000 in government bonds was stolen therefrom. (The burglars took the safe from his place of business and transported it in the car of the confessed accomplice Tillery "out on the Sanford Road," and there broke into and extracted the money from it, leaving the safe in a creek.) Rusk identified a $10 bill, which was exhibited to him, saying: "The $10 bill that I hold in my hand was in my safe on the night my place was burglarized. I recognize it. I remember very distinctly this piece of yellow color at the end of the bill. I had wrapped it with some tape and the tape marks are on the bill now. I have pulled those tape marks off before, and they do leave a slight mark on the bill. . . I am identifying the bill by the colored spot of the scotch tape mark." This bill, which was sent to this court with the record in a special exhibit, is discolored by a yellowish-brown stain which appears on each side thereof at one end.
Ocle Newman testified for the State: "I heard about the Rusk Motorcycle Company being broken into and entered and on the day before that night I saw the defendant, Homer Blakely. . . He said he wanted to see me that night. I saw him the next day. . . We got in a car and rode over to the Rusk Motorcycle Company. We got out of the car. He had informed me that he heard that the Rusk Motorcycle Company was going to be broken in by some people, and we went over there to look at it. . . He went around to the side. . . Then we went across the river [from Columbus], and stopped somewhere around a drug store some place. He told me he was going to see somebody and I lay down in the back of the car. I didn't want to see who it was. He said he wanted us to see somebody, he didn't say who. . . I was not looking. . . I seen him later on in North Carolina at a little old tourist camp. I went up there *Page 284 
with James Bush. Homer Blakely paid James Bush a little money, I think approximately $35. I don't remember the denomination. Homer [the defendant] had on him at that time a wallet with some money, a pretty good sized long wallet. I couldn't tell whether there were any packages in it or not." The credibility of the witness was sought to be impeached by questioning him on cross-examination as to his prior conviction for burglary. The witness also testified: "[In North Carolina] there was nothing unusual about his [the defendant's] appearance, and there was nothing unusual about his having some money in his wallet."
When placed on the witness stand by the State, James Bush testified: "On . . the 22nd day of October, 1946, I made a trip up to Fayetteville, North Carolina. Newman went with me. While I was up there I met Homer. . . We went into a store and Homer says, `I owe you some money, James.' I says, `Yes.' He says, `I want to pay you some of it. How much is it?' I says, `I don't remember the exact amount,' and he says, `Here is $35.' This $10 bill was in my possession when the police picked me up. I had $754 in my possession. Homer could have give me this as well as anybody else could have. I couldn't swear. I am not going to tell a lie. . . I stated to [the solicitor-general] that Homer gave me this $10 bill, but I was in jail and you know I wanted to get out. . . I had borrowed $700 from Ed Revells. I had it in my pocket. . . And I had $19 of my own personal money and $35 Homer gave me. I am not going to say Ed gave it to me or Homer gave it to me, or who. I might have told Mr. Ed [the solicitor-general] that, but I was in jail and wanted out. It is a little tough when you get down there and they tell you they are going to put you in the penitentiary and you know you ain't done it. Homer had a big pack of bills and he undone them and gave me $35 out of the bills. They had something around the end of them, tape or rubber or something around the edge of them. It could have been printer's tape. He had a package of money about like that. . . That is not the first time I have seen bills stuck together like that. I do it myself and have seen other people do it. There wasn't anything unusual about that."
Lamar Tillery, a confessed accomplice, testified: "On . . the 21st day of October, 1946, I saw Homer Blakely, the defendant *Page 285 
on trial. I had a conversation with him on that day concerning the robbery of the Rusk Motorcycle Company. He came to my house twice; one time concerning the robbery of Rusk Motorcycle Company, and the other to sell some narcotics. He borrowed my automobile and said he was going after a safe. When he got it he came back to my house and picked me up. . . We went out on the Sanford Road and busted into the safe. . . After the money was taken out it was put in the automobile, and I was given approximately $3500 and some change. They taken the rest and went on with it. Buddy Earhart, myself, Homer Blakely, and his girl . . . We threw the safe in Uchee Creek. They told me they got the safe by going through the side entrance and backing the automobile out and rolling the safe and putting it in the automobile. The government bonds were destroyed and throwed in the creek. . . I am under a two-year sentence in the United States Public Service Hospital. . . I understand that there is nobody there at the hospital except morphine addicts and people who take other forms of dope. . . I have been addicted to the use of morphine for several years."
P. E. Shoffeitt, of Auburn, Alabama, testified that he was a toxicologist with the State [Alabama] Department of Toxicology and with the Department of Criminal Investigation of Alabama. The witness's qualifications were admitted by counsel for the defendant. He then testified that he had made an examination of the trunk compartment of the car of Tillery [the accomplice], and found there paint flakes which were compared with the paint on the safe, and that in his opinion the safe taken from the Rusk Motorcycle Company had been hauled in the trunk of Tillery's automobile.
T. H. Slay of the Phenix City, Alabama, police department testified: "I was requested to find Homer Blakely and arrest him. I went everywhere I thought he might be. I knew where his daddy lived. I went out there and looked for him. I was unable to find him. I do not know the date on which I was instructed to look for him. I think it was about three days after the burglary. Three days before we got the arrest order. . . I know Homer Blakely. I don't know where Homer lived. I knew where his father lived, but I don't know whether he was living with his father or not." Another officer testified that $3500 *Page 286 
had been recovered from Lamar Tillery, the confessed accomplice.
The defendant, in his statement to the jury, said: "I am not guilty of what they have got me charged with. As far as going out wherever this place is — motorcycle shop — I haven't been anywhere with this Newman boy. I . . barely know him. . . As far as having him in my car, I have not; and I haven't had any money — any of the rest of the money in my possession at no time. The reason for me to leave here, I had a fight with my brother-in-law down in lower Girard, front of a cafe down there, and he threatened to kill me, and I come over and told Sheriff Matthews about it. And my sister was ill during the time and I decided it was best to leave where I wouldn't worry her. As far as having any connection with any burglary or anything, I haven't had anything to do with it." The defendant introduced other evidence in order to prove an alibi. He also placed on the witness stand another witness, Richard Lamar Earhart, who had pleaded guilty to having participated in the burglary in question. Earhart testified that the defendant had nothing to do with the robbery, and that he and Tillery were the only ones who participated in it. A. G. Reese, in rebuttal for the State, testified: "I know Buddy Earhart. . . I had him arrested. . . Earhart said that he and Homer Blakely made the transaction with Lamar Tillery to get his car, and they met him around Dr. Prather's drug store with "Newt" Newman laying in the back of the car, and they taken Tillery's car and they brought it over here . . and got the safe. He said Homer Blakely and hisself got it, but that he didn't want to tell on Blakely because Blakely had killed two men he knew of, and he would kill him if he would tell it. He said, `Just the two of us did it, and we picked up Tillery across the river and carried him out where we broke the safe open.'"
1. The judge charged the jury in the instant case in part as follows: "Now in this case, gentlemen, the defendant contends that one of the State's witnesses, to wit, one Tillery, was what in the law would be considered as an accomplice *Page 287 
in this alleged crime, and I give you this principle of law, gentlemen, to govern you in considering the testimony of an accomplice: An accomplice is one who colludes and connives and contrives and conspires with another and in some way aids and abets in the commission of a crime, and I charge you this principle of law: The testimony of a single witness is generally sufficient to establish a fact. An exception to this rule is made in the case of a felony — and burglary is a felony — where the only witness is an accomplice; in such case corroborating circumstances may dispense with another witness. Thecorroborating circumstances referred to must be such as toconnect the defendant with the perpetration of the crime, andtend to show his participation therein. Now, the State contends in this case that it has produced other witnesses and other facts and circumstances which corroborate the testimony of the witness Tillery. That is an issue for you to try and pass upon and you alone can determine it." (Italics ours.)
Complaint is made by the defendant in ground four, which is the first of the special grounds in his motion for new trial, that the charge was misleading to the jury because the court failed to instruct the jury anywhere in his charge that the corroborating circumstances must be such as in themselves andindependently of the testimony of the accomplice directly
connect the defendant with the crime or lead to the inference that he is guilty, and that in failing so to charge the court inferred to the jury that a combination of the testimony of the accomplice and facts which merely cast on the defendant a grave suspicion of guilt was sufficient to convict.
In McCrory v. State, 101 Ga. 779, 780 (28 S.E. 921), Lumpkin, P. J., speaking for the court, said: "Since the decision of this court in Childers v. State, 52 Ga. 106, the rule has been well settled that, in a case of felony, there can be no conviction upon the testimony of an accomplice, unless the same is corroborated by other evidence connecting the accused on trial with the perpetration of the crime, and tending to show his participation therein. This rule has been repeatedly stated and applied, and was recognized in the recent case of Blois v.State, 92 Ga. 584 [20 S.E. 12]." In those cases where the Supreme Court and the Court of Appeals have used language other than that in the *Page 288 Childers case, it is probable that they meant by it merely to state in different language the rule laid down therein (andcharged by the court in the instant case), "because, upon this subject, the case of Childers v. State, 52 Ga. 106, lays down the rule that has been followed in other decisions where the same subject is involved." Callaway v. State, 151 Ga. 342,344 (106 S.E. 577).
In the charge here objected to the court charged, in the words which we have italicized, the rule approved in the McCrory andCallaway cases, supra, as well as in Austin v. State,47 Ga. App. 217, 219 (169 S.E. 729), and in the many other cases which follow the well-settled rule in Childers v. State. This rule, of course, may be stated correctly in other words, as where the court in McCalla v. State, 66 Ga. 346, 349, and Smith
v. State, 189 Ga. 169, 173 (5 S.E.2d 762), said that the language in Roscoe on Criminal Evidence, 122 — "There should be some fact deposed to independently altogether of the evidence of the accomplice, which taken by itself, leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it" — was a correct statement of the rule. However, this rule stated in the McCalla and Smith cases is not different in substance, but merely in language, from the rule in the Childers case, and in the Blois, McCrory, Callaway, andAustin cases, supra, which was followed by the court in the instant case; and the instruction here given to the jury was not subject to the objection urged.
2. Special ground 5 complains that the court erred in charging the jury as follows: "Now, gentlemen, flight is a mere circumstance of guilt when indulged in from a sense of guilt or consciousness of guilt. If flight is indulged in for any other purpose or cause, it would not be a circumstance to be considered by you. You are first to determine whether or not the defendant indulged in flight — that is, that he fled the realm and the vicinity in which the alleged crime is charged to have been committed. If he fled, then you will determine from the facts and circumstances in the case first, whether or not be fled; and if he fled, from what cause. Was it from consciousness of guilt or some other cause? If it was from consciousness of guilt and you so find, then you would consider the flight, but it would be only a slight circumstance as to the defendant's guilt. If he did not flee — and that is an issue *Page 289 
for you to try — he says he did not — then, gentlemen, you would not consider it at all. If he did flee, and fled not from a sense of guilt or consciousness of guilt, then, gentlemen, again you would not consider it. How all of that is, gentlemen, are questions of fact for you to determine." It is contended by the defendant that such charge was erroneous, in that there was no evidence on the question of flight which would justify such a charge, and that such a charge was injurious in that it allowed the jury to consider flight as a corroborating circumstance.
The testimony of Bush and of Newman that on the day after the burglary they went to North Carolina, and that while they were there they met the defendant in "a little old tourist camp," taken together with that part of the defendant's statement which admitted that about two weeks after October 12 or 13, 1946 (the burglary was committed on October 21, 1946), he "left here" (the city where the burglary was committed — his explanation being that he took this trip because he and his brother-in-law had a fight and that his brother-in-law threatened to kill him), and taken with the testimony of Policeman T. H. Slay, who sought to find and arrest the defendant, that he was unable to arrest the defendant because he could not locate him, and with other slight circumstances which appear in several instances throughout the record, was sufficient evidence to authorize the charge on flight as given by the court. Callaway v. State, 151 Ga. 342, 345
(2) (supra); Grant v. State, 122 Ga. 740, 741, 742
(50 S.E. 946); Brown v. Matthews, 79 Ga. 1 (2) (4 S.E. 13). Flight may be established by circumstantial, as well as by direct, evidence (Terry v. State, 15 Ga. App. 108 (2),82 S.E. 635); and flight by one accused of crime, immediately after the alleged commission of the criminal act, may be considered by the jury together with the other evidence in the case in determining as to the guilt or innocence of the accused, though flight of itself may not be sufficient to establish guilt.Barnett v. State, 136 Ga. 65 (3) (70 S.E. 868); Sewell
v. State, 76 Ga. 836; Smith v. State, 63 Ga. 168, 170
(18). This exception to the charge is not meritorious.
3. The defendant contends in special ground 6 that the judge erred in the following portion of his charge to the jury: "The State further contends, gentlemen, that recently after the commission of this alleged offense that the defendant was found in *Page 290 
possession of some parts of the fruits of the crime, and that is a matter for you to determine from the evidence in the case as to whether or not he was found in possession of some of the fruits of this crime. If he was, then, gentlemen, this principle of law which I shall give you would apply: If a crime should be committed as charged and property stolen as a result of such crime, and if recently thereafter the defendant should be found in possession of the stolen property, or some part of it, that would be a circumstance from which the jury would be authorized to convict, if they saw fit to do so, unless the defendant should make explanation of his possession of the stolen property consistent with his innocence, in the opinion of the jury, all of which are questions of fact for the jury. Now, first, gentlemen, you will determine whether or not he was found in possession of any of the fruits of the crime. If he was, then that principle of law would apply. If he was not, then it would not apply, and you would not be authorized to weigh it against him. That is an issue in this case, gentlemen, for you and you alone to determine." The ground of objection is that "said charge was . . not adjusted to the evidence and was misleading in that it allowed the jury to consider recent possession as a corroborating circumstance, and was not corrected elsewhere in the charge of the court."
The evidence relative to the ten-dollar bill, which was alleged to be the stolen fruit in the recent possession of the defendant, was: that the witness Rusk positively identified the bill as one which was in his safe at the time it was stolen in the burglary, and stated that the bill was discolored and marked by tape placed by him upon it; that the witnesses Newman and Bush met the defendant in North Carolina recently after the burglary, and the defendant then and there paid Bush $35 out of a large package of bills which had some type of tape or rubber around its edge; and that this bill was thereafter found in the possession of Bush when he was arrested. It will be noted that the objection is, not that the evidence tending to support the issue of recent possession of stolen goods is insufficient to convict, but is that under the facts of this case the charge was unauthorized by the evidence and that the court erred in submitting the issue to the jury. We do not think that under the facts appearing it was *Page 291 
reversible error to charge the jury on this issue and to allow them to consider whether this evidence amounted to a corroborating circumstance. Brown v. Matthews, 79 Ga. 1, 8
(supra); Randall v. State, 73 Ga. App. 354, 371
(36 S.E.2d, 450). The charge was not subject to the objection urged.
4. The jury seem to have rejected the evidence introduced by the defendant which tended to prove an alibi; and they were authorized so to do. They were also authorized to reject the testimony of the confessed accomplice Earhart, in which he swore that the defendant took no part in the burglary, because they were authorized to find that this testimony was impeached by Officer Reese in his testimony as to a prior contradictory statement of the witness.
"'A conviction in a case of felony is sustainable upon the testimony of a single witness, though an accomplice, when the same is corroborated by other testimony connecting the accused on trial with the perpetration of the crime and tending to show his participation therein.' . . But `it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. . . Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. . . The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is found on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence.' Hargrove v. State, 125 Ga. 270, 274
(54 S.E. 164); Whaley v. State, 177 Ga. 757 (171 S.E. 290)."Newman v. State, 63 Ga. App. 417 (2, 3) (11 S.E.2d 248). See also Roberts v. State, 55 Ga. 220 (3); Mitchell v.State, 202 Ga. 247, 248 (42 S.E.2d 767). "The facts relied upon as corroboration may be trifling when viewed by themselves and separately from the entire case; but the jury had the right to consider all the facts and to consider them in their relations one to another, and to determine whether or not, considering the facts and comparing them in their proper setting, under the evidence adduced, they tended to connect the defendant *Page 292 
with the commission of the crime and were a sufficient corroboration of the evidence of the accomplice to authorize a conviction of the accused under the law." Callaway v. State,151 Ga. 342, 348 (supra).
Applying the rule as thus stated, the evidence authorized the verdict finding the defendant guilty of burglary, and the court did not err in overruling the motion for a new trial for any reason assigned.
Judgment affirmed. Gardner and Townsend, J. J., concur.