## 32841.   HAMBY v. THE STATE.

Decided June 21, 1950.   Rehearing denied July 7, 1950.

*Mitchell, Mitchell & Mitchell, Ralph M. Holloman,* for plaintiff in error.

*Hubert Calhoun, Solicitor-General,* contra.

MacIntyre, P. J.   1.   In special ground 1 of the motion for a new trial, as amended, the following portion of the charge of the court to the jury is assigned as error: "Now, in this case, the State relies on what is known—it relies in part on what is known as the testimony of an accomplice.   And I give you this principle of law to govern you there.   The testimony of a single witness is generally sufficient to establish a fact.   An exception to this rule is made in the case of a felony.   Where the only witness is an accomplice, in such [a felony] case, corroborating circumstances may dispense with another witness.   The corroborating circumstances referred to must be such as to connect the defendant with the perpetration of the crime, and independently of the other evidence in the case, must connect the defendant with the commission of the crime charged in the bill of indictment."   (Brackets ours.)   The defendant contends that this charge was erroneous in that this charge was an intimation or expression of an opinion of the trial judge in his charge to the jury that the State's witness and codefendant, Robert Junior Chambers, was an accomplice, and denied to the jury the right to determine whether or not the State's witness and codefendant, Robert Junior Chambers, was an accomplice.   The judge, in the excerpt here referred to, was classifying the testimony relied upon in part by the State as being a class of testimony known or called accomplice's testimony.   He was not classifying the particular witness delivering it as an accomplice.   He did not call the name of any witness in connection with such testimony.   He did not state what any witness had testified.   He was merely charging an abstract rule of law as it related abstractly to the testimony of any accomplice in any given case, which rule of law, he said, the State relied upon in the instant case.   The court

in effect charged that the State relies upon a certain rule of·law and stated that rule of law in the abstract, but did not apply it to any person or witness concretely. The court simply said in effect that where or if there is any testimony in a felony case by an accomplice—not necessarily in the instant felony case, but in any felony case—the jury should apply the rule of law charged, to that testimony. *Cantrell* v. *State*, 141 *Ga.* 98 (5) (80 S. E. 649); *Wells* v. *State*, 194 *Ga.* 70 (4) (20 S. E. 2d, 580). After the court had given that portion of the charge complained of in this ground, the court charged: "After considering all the testimony, the facts and circumstances of the case, the documentary evidence produced, the defendant's statement, and applying . the law as given you in charge by the court, to the testimony as you find it to be and believe it to be, if you are satisfied and convinced to a reasonable and moral certainty and beyond a reasonable doubt of the defendant's guilt . . [you will find the defendant guilty; otherwise, you will find the defendant not guilty.]" (Brackets added.) We do not think that the charge complained of was erroneous for the reasons urged.

2. Special grounds 2 and 3 assign error upon the failure of the court anywhere in its charge to the jury to define what is necessary to constitute one an accomplice, and the failure of the court to instruct the jury that it was a question for the jury to determine whether the witness and codefendant, Robert Junior Chambers, was an accomplice. "Where the sole witness directly connecting the accused with the crime . . was an accomplice, the failure of the trial judge to instruct the jury what would, under the law, constitute an accomplice, or to define the term accomplice, is not reversible error, where it does not appear that there was a timely written request for such an instruction." *Baker* v. *State*, 14 *Ga. App.* 578 (1) (81 S. E. 805); *Butts* v. *State*, 14 *Ga. App.* 821 (1) (82 S. E. 375); *Cantrell* v. *State*, supra; and see, in this connection, *Cammons* v. *State*, 59 *Ga. App.* 759, 766 (2 S. E. 2d, 205). In the absence of a request to charge upon these points, we do not think that grounds 2 and 3 are meritorious.

3. " 'A conviction in a case of felony is sustainable upon the testimony of a single witness, though an accomplice, when the same is corroborated by other testimony connecting the accused

on trial with the perpetration of the crime and tending to show his participation therein.' . . But 'it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular . . Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. . . The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence.' *Hargrove* v. *State,* 125 *Ga.* 270, 274 (54 S. E. 164); *Whaley* v. *State,* 177 *Ga.* 757 (171 S. E. 290)." *Newman* v. *State,* 63 *Ga. App.* 417 (2, 3) (11 S. E. 2d, 248). See also *Roberts* v. *State,* 55 *Ga.* 220 (3); *Mitchell* v. *State,* 202 *Ga.* 247, 248 (42 S. E. 2d, 767). " 'The facts relied upon as corroboration may be trifling when viewed by themselves and separately from the entire case; but the jury had the right to consider all the facts and to consider them in their relations one to another, and to determine whether or not, considering the facts and comparing them in their proper setting, under the evidence adduced, they tended to connect the defendant with the commission of the crime and were a sufficient corroboration of the evidence of the accomplice to authorize a conviction of the accused under the law.' *Callaway* v. *State,* 151 *Ga.* 342, 348 (106 S. E. 577)." *Blakely* v. *State,* 78 *Ga. App.* 282, 291 (50 S. E. 2d, 762).

Robert Junior Chambers, the codefendant of Hamby under the indictment, testified for the State in part as follows: " . . I know the defendant on trial, Mr. Fred Hamby. . . I have known him about five years. I have worked for him, about that length of time. . . Yes, I am jointly indicted with Mr. Hamby for burning the dwelling house of Rosa Edwards. Yes, sir; I did burn her dwelling house. On the 4th of June, Saturday evening, I was at home asleep, and my brother came around there and woke me up and told me Mr. Hamby wanted to see me. I went around there to see what he wanted and he told me to pay him. I told him I didn't have his money right then—

that it would be later this evening when the man come and paid me. I owed him a dollar and ten cents. And I told him it would be later and I was going back around to the house so I would be there when the man come so I could pay him and he said, 'no,' say 'You don't need to go back 'round the house, just stick around,' say, 'Your mother or some of them will get the money,' and I stuck around with him. . . Later the bartender walked out and he told me that he wanted me to go up to the warehouse to help him straighten up around in there. I went up there with him to help him straighten up and he got a gallon jug and two quart bottles. He got them in the warehouse. In the warehouse, yes, sir, and a funnel and got the can and told me to pour it up into the gallon jug and two quart bottles and I poured it up and he says, 'Robert, I'm going to burn the empty house and Rosa's house and I want you to do it for me.' Well I said, 'Mr. Hamby, you ought not to burn the people's houses up.' He said, 'They're my houses and I know what I want to do with them,' and said, 'If you don't do it I'm going to kill you.' And I went on up to the — — we went on back to the beer and wine building and he set them behind the counter. Set the two—the gallon jug and two quart bottles. And later after then the bartender said he was going home to eat supper and he left and he said, 'Well, I'm glad he's gone.' And he told me to carry the two gallon jug and—the two quart bottles and the gallon jug behind—back there and put them in the empty two room apartment back of the beer and wine building. And I put them in the empty two room apartment back of the beer and wine building. . . Just inside the door in the left hand corner. And he said, 'Stay around here with the place until I get back, I'm going and get Eddie and Rosa and Nettie Jones.' He went and got Rosa and Eddie and Nettie Jones and come back . . and set up a half a gallon of wine and told them to drink. And they started drinking [and] he left. Rosa Edwards lived in this corner house here. Nettie Jones, she lived in the other corner house, over there. The one in the middle, it was empty. . . The three of them came back with Mr. Hamby. And he said, 'here,' say, 'I'm going to set you all up be's you all were so nice to pay the rent this month,' and gave them—set up a half gallon of wine and says, 'If that ain't enough I've got some more up

on the shelf.' And me and him walked out and he gave me a box of safety matches and told me to go on and put two quarts in the loft of the empty house and the gallon jug just inside of Rosa's door and strike the match and come on back. . . I went around there and put the two quarts in the loft and poured the gallon jug just inside of the door. The two quarts in the loft of the empty house, the one in the middle there. The gallon jug I put it just inside of the back door of Rosa's house. It was full of gasoline. Just turned it over just inside of the door. There was one door at the front and one at the back. I was at the back door. I opened the door and turned the gasoline over. I then came back around there and he gave me a quarter and told me to go get him a package of cigarettes. Said if anybody come up and ask where I was at he would tell them that I had been gone for an hour or more and he don't know what become of—what happen with me the reason I ain't got back. And I came back, the policeman told me to pull up out from the front of the place. I went off in his car. I did get the cigarettes for him. . . When I got back the fire department was there. When I struck the match the building did flame or flare up. Yes, sir, the flame jumped—caught it when it struck. No, sir, I was not burned any. After I got back with the cigarettes— with whom did I talk, well, Eddie came in—in the place—and told me—Q. Was Mr. Hamby there when told you that? A. Yes, sir. What did Eddie say to me? He says, 'Robert,' says, 'You and Mr. Hamby is mighty dirty to sot my house on fire,' and I walked out and he was—him and Mr. Hamby had a few words in there but what they was talking on I do not know. . . 'cause I walked out. Did I hear Eddie tell Mr. Hamby anything about some money being burned up or lost, I heard Mr. Hamby speak of it—yes, sir. He spoke of it after I got back in with the cigarette—I mean when I was in there with the cigarettes. What did he say with reference to the loss sustained by Rosa Edwards? About her money being burned up, Well, when I went and got the coca colas for the fireman and come back he told me to go around there and keep up with—gave me the bottle opener and told me to go around there and keep up with Eddie and Rosa and tell them that he would replace everything back after the firemen leave and if the officer seed me

'round there and happened to question me and ask me any questions or what they'd do to me, don't tell them anything. If I did he'd kill me. He told me to tell Rosa and Eddie that he would replace everything that was burned up. I went around there to tell them but when I got 'round there with the coca colas and all the officer arrested me before I got to the firemen to give them the coca colas. I talked with the officers then and there, yes, sir. I did tell them what happened, yes, sir. Did he—did Mr. Hamby offer me anything to set fire to this property; he offered—told me he would give me a big set-up and he wanted me to build the building back. I was in that line of business, yes, sir." It appears from the other evidence in the case that the odor of gasoline was detected at the site of the fire. The bottles and jug which Robert Chambers testified that he placed in the houses burned were found there and introduced in evidence. The container from which Mr. Chambers testified that he took the gasoline was found in the defendant's warehouse. Hamby came to the house of Rosa Edwards and invited her and her son Eddie Riggins to a "set-up" of wine just prior to the fire, and insisted upon Rosa's leaving her house unlocked when she was in the act of locking it when she went to Hamby's wine shop for the set-up. Robert Junior Chambers told Eddie Riggins in Hamby's presence that Mr. Hamby had got him to set the house on fire. Hamby offered to make good all the losses sustained by Rosa in the fire and told Riggins to "go on and shut up," about the fire. There was a loan on Hamby's property amounting to $4200. Part of the property securing the loan consisted of the houses burned. The houses burned were insured for a total of $2500 together. The insurance was payable to the bank holding the security deed on the property. The stepfather of Robert Junior Chambers testified that in January or February before the fire in June, Hamby had endeavored to hire him to burn the buildings or houses in question. Applying the rule as to corroboration of an accomplice, as stated above, to the evidence, we think the jury was authorized in finding the defendant guilty of arson, and the court did not err in overruling the motion for a new trial.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the whole court

consider any case in which one of the judges of a division dissents, this case was considered by the court as a whole.

*Judgment affirmed. Sutton, C. J., and Gardner and Worrill, JJ., concur. Felton and Townsend, JJ., dissent.*

TOWNSEND, J. (dissenting). As to the first division of the opinion, I dissent because I believe that ground 1 of the amended motion for a new trial requires a reversal. Therein it is set out that the trial court charged the jury as follows: "Now, in this case, the State relies on what is known—it relies in part on what is known as the testimony of an accomplice." Thereupon the trial court proceeded to charge the jury in substance Code § 38-121, which provides for the requirement of corroboration of the testimony of an accomplice. It is contended in the amended motion for a new trial that this charge was error in that it amounted to the expression of an opinion by the trial judge in his charge to the jury that a witness for the state was an accomplice of the defendant, Fred Hamby, and denied the jury the right to determine whether or not such witness was such an accomplice; that therefore said charge amounted to an expression of opinion by the trial judge in his charge to the jury that Fred Hamby participated in the crime of which he was charged and for which he was on trial, with the State's witness; that all this was a violation of Code § 81-1104 which forbids the trial court to express an opinion as to what has been proved or as to the guilt of the accused in a criminal case and which requires the appellate courts of this State to reverse the case for a new trial where such error is assigned. The case here, therefore, should turn solely on the question of whether or not the trial judge expressed such an opinion when he charged the jury that "in this case the State relies on what is known as the testimony of an accomplice." From the record it appears that Robert Junior Chambers was jointly indicted with the defendant. It further appears that Robert Junior Chambers was the principal witness for the State. He admitted in his testimony that he burned the buildings in question. He swore that the defendant procured him to do so. All this was denied by the defendant. Thus an issue for the determination of the jury was made as to whether or not Robert Junior Chambers was an accomplice of the defendant. The charge of the court, in my opinion, does

not leave this question for the determination of the jury. On the other hand, it is my opinion that the judge in no uncertain terms informed the jury that Robert Junior Chambers was an accomplice of the defendant when he told the jury that "in this case, the State relies on what is known as the testimony of an accomplice."

The following charges have been held reversible error: "The witness, 'having been convicted, is an accomplice as a matter of law.' " *Sellers* v. *State*, 41 *Ga. App.* 572 (153 S. E. 782). " 'One of the witnesses testified in this case to having worked at this still for this defendant, and that, under the law, constitutes what is known as an accomplice.' " *Demonia* v. *State*, 69 *Ga. App.* 862 (27 S. E. 2d, 101). " 'I charge you as a matter of law that the codefendant, L. C. Moffett, a witness for the State, is an accomplice so far as your consideration of his testimony is concerned.' " *Middleton* v. *State*, 72 *Ga. App.* 818 (35 S. E. 2d, 317). " 'Charles McDonald of course admits he is an accomplice. He has filed a plea to this crime; and he being an accomplice in the case of a partner with the defendant, and having admitted to have been there, you would not be authorized to convict James Pope Kryder on the testimony of McDonald alone.' " *Kryder* v. *State*, 57 *Ga. App.* 200 (194 S. E. 890). " 'I believe it is admitted in this case that Tommy Lyons was an accomplice.' " *Golden* v. *State*, 45 *Ga. App.* 501 (165 S. E. 299). " 'Now, you are to determine, gentlemen, whether or not he is an accomplice. He denies having anything to do with the commission of this offense himself; he states that he had nothing to do with it, and was not an accomplice.' " *Suddeth* v. *State*, 112 *Ga.* 407 (37 S. E. 747).

In *Demonia* v. *State*, supra, it is held as follows: "Section 81-1104 of the Code makes it reversible error for a trial judge to intimate or express in his charge to the jury his opinion as to what has or has not been proved. Hence, on the trial of a person accused of distilling spirituous and alcoholic liquors, it was reversible error to charge, 'Gentlemen of the Jury, one of the witnesses testified in this case to having worked at this still for this defendant, and that, under the law, constitutes what is known as an accomplice.' This was an expression of an opinion that the witness referred to was an accomplice of the defendant."

Cited in support of the majority opinion that the charge is not erroneous are the cases of *Cantrell* v. *State,* 141 *Ga.* 98 (5), and *Wells* v. *State,* 194 *Ga.* 74. In the *Cantrell* case the court charged the jury in part on the subject of the corroboration of an accomplice as follows: " 'I do not charge you that there is or there is not testimony of an accomplice in this case. I simply give you the rule; and if there is any testimony that has been delivered in the case from an accomplice, why then you apply these rules that the court gives you in charge to that testimony.' " In the *Cantrell* case the court left it to the jury whether or not the State's witness was an accomplice. In the *Demonia* case the court did not leave that question to the jury. In the instant case the court did not leave that question to the jury. In *Wells* v. *State,* supra, the court charged the jury as follows: " 'I charge you, gentlemen of the jury, that if any witness in this case has been indicted for the offense of murder with reference to the homicide of Willie Lee Wells, either as principal or as an accessory, then and in that event he would be an accomplice. If you should find from the evidence that the witness was an accomplice, then I charge you in this case that Freddie Hooks, alias Tony McBrown, is an accomplice; then before you would be authorized to convict . . the defendant upon the testimony of such witness alone, if you find from the evidence that such witness was an accomplice.' " Had error been assigned on this excerpt from the charge on the ground that it amounted to an expression of opinion in violation of Code § 81-1104, I believe the Supreme Court would have held the same to be erroneous. However, the objection to this excerpt in the *Wells* case was that it was injurious and misleading for the court in one place to instruct that Freddie Hooks was an accomplice and in other places to instruct that it would be left to the jury to determine whether or not Freddie Hooks was an accomplice. The Supreme Court there merely held that the charge complained of was not subject to this criticism. The majority opinion states that "the court in effect charged that the State relies on a certain rule of law and stated that rule of law in the abstract but did not apply it to any person or witness concretely. The court simply said in effect that where or if there is any testimony in a felony case by an accomplice—not necessarily in the instant felony case,

but in any felony case—the jury should apply the rule of law charged to that testimony." It is also stated in the majority opinion that "The judge, in the excerpt here referred to, was classifying the testimony relied upon in part by the State as being a class of testimony known or called accomplice's testimony. He was not classifying the particular witness delivering it as an accomplice. He did not call the name of any witness in connection with such testimony. He did not state what any witness had testified. He was merely charging an abstract rule of law as it related abstractly to the testimony of any accomplice in any given case, which rule of law he said the State relied upon in the instant case." All that of course depends upon what is meant by the language "in this case, the State relies on what is known as the testimony of an accomplice." It appearing that Robert Junior Chambers was the only witness for the State who contended by his testimony that he committed the crime for which the defendant was on trial and that the defendant procured him to do so, I think it unnecessary for the court to call his name in order to make the excerpt consitute a violation of Code § 81-1104. It is my opinion that when the trial judge said "in this case", he was not talking abstractly about any case, but was talking about the case on trial. It is my opinion that when he said "the State relies on what is known as the testimony of an accomplice" he there in effect told the jury that Robert Junior Chambers was an accomplice of Fred Hamby, the defendant. He may have meant to classify testimony rather than the witness, as stated in the majority opinion. It may not have been his intention to classify any particular witness. However, I think he nevertheless did classify Robert Junior Chambers as the accomplice of Fred Hamby and accordingly the excerpt is error as amounting to an expression of an opinion by the trial court in violation of Code § 81-1104.

I am authorized to say that Felton, J., concurs in this dissent.