23049. WALDROP v. THE STATE.

CANDLER, Presiding Justice.  Charles Waldrop, Sammy R. Farmer and Charles Stephens were jointly indicted in Clayton County for robbery.  The indictment alleges that they, together with James Kilgore and O'Neal Williams entered into a conspiracy with each other to rob the Harris Supermarket; that pursuant to such conspiracy, the robbery was accomplished on February 29, 1964, and $5,710 was taken by intimidation and by use of offensive weapons from such place of business; that James Kilgore and O'Neal Williams were the actual perpetrators of the robbery; but this defendant, Sammy R. Farmer and Charles Stephens did procure, counsel and induce them to perpetrate the robbery and did in

specified ways aid and abet them in its commission, though not actually present at the time and place of its commission. Waldrop was tried separately. He was convicted of robbery by use of an offensive weapon and was sentenced to serve a prison term. His amended motion for a new trial was overruled and he excepted to that judgment. *Held:*

1. To authorize a felony conviction on the testimony of an accomplice, it is necessary that the evidence of the accomplice be corroborated (*Code* § 38-121), and "the corroborating circumstances should be such as, independently of his testimony, to lead to the inference that the defendant is guilty." *McCalla v. State,* 66 Ga. 346; *Callaway v. State,* 151 Ga. 342 (106 SE 577); *Langston v. State,* 153 Ga. 127 (3) (111 SE 561); *Whaley v. State,* 177 Ga. 757 (2) (171 SE 290); and *Jackson v. State,* 219 Ga. 819 (136 SE2d 375). But "it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. . . Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict. . . The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence." *Hargrove v. State,* 125 Ga. 270, 274 (54 SE 164); *Rawlins v. State,* 124 Ga. 31, 49 (52 SE 1); *Mitchell v. State,* 202 Ga. 247 (3) (42 SE2d 767). In the present case the jury was authorized to find that the evidence of the alleged accomplice was sufficiently corroborated.

(a) Where two or more persons enter into a conspiracy to commit a penal offense and in furtherance of the conspiracy the offense is committed, all of the conspirators who act together in consummating the object of the conspiracy are guilty though some be absent at the time and place of its commission. *Gore v. State,* 162 Ga. 267 (134 SE 36).

Since the evidence of the State's witness Farmer shows that this defendant actively participated in the commission of the alleged robbery and that his evidence was sufficiently corroborated by the testimony of other witnesses and by the de-

fendant's statement to the jury, there is no merit in the general grounds of the motion for new trial.

2. The amendment to defendant's motion for new trial contains 14 special grounds, but grounds 2, 4, 5 and 13 thereof have been expressly abandoned and ground 3 has not been argued either orally or by written brief. This being true, they will not be considered or ruled upon.

3. In his opening remarks to the jury, the solicitor general stated: "The State expects to prove that the defendants Waldrop, Stephens and Sammy Farmer attempted on different occasions to commit a robbery other than the one charged in the indictment." When this statement was made, counsel for the accused moved for a mistrial on the ground that such statement put the character of the accused "in issue before this jury." Respecting this motion the court said: "I am not going to make a final decision on this, depending upon the evidence in the case, because I say it is possible for that information to be related to the jury under the proper setting and circumstances. . . I assume that the solicitor is going to place this evidence before the jury in the proper manner and proper sequence, but if he does not, then I will grant this motion." After the State finished introducing evidence, this motion for a mistrial was neither renewed nor ruled on, and since it was not, this special ground of the motion presents no question for determination by this court. In this State a judgment by inference or implication is not reviewable by an appellate court. *Amos v. Amos,* 212 Ga. 753 (95 SE2d 687); *Hardin v. Homeyer,* 213 Ga. 321 (4) (99 SE2d 136).

4. While Sammy Farmer, a witness for the State, was being directly examined by the solicitor general, he was asked: "When you all were making this trip back to Georgia, what if anything was said about this job [robbery of Harris Supermarket] that they had to do where they were known too well?" He answered: "Well, it was not mentioned, they were too busy it seemed like having the time of their life, laughing and telling first one thing and another about how they cheated so and so. Take, for instance, about the time they went into this hotel and running up a big bill and stayed there maybe two days and leaving at 5 in the morning or 4 in the morning and telling the fellow or lady downstairs that they were expecting an important phone call and that they would be back at 6 and to tell the person if they called that

they would be back at exactly 6 and walk out and leave without paying the bill or nothing." Immediately after this question was asked and answered, counsel for the defendant moved for a mistrial on the ground that the latter portion of Farmer's answer which related to other acts and conduct of the defendant put his character in evidence when he had not elected to do so. The motion for a mistrial was overruled and special ground 9 of the motion for new trial alleges that this ruling was erroneous and harmful to the accused. There is no merit in this contention. That portion of the answer on which the motion for a mistrial was based was not in response to the question the solicitor general propounded the witness Farmer; and since it was not, counsel for the defendant should have moved to rule it out of evidence and for an instruction to the jury to give it no consideration in its determination of the defendant's guilt of the offense for which he was being tried. In this connection see *Burns v. State*, 191 Ga. 60 (9), 74 (11 SE2d 350) ; *Carrigan v. State*, 206 Ga. 707 (3) (58 SE2d 407).

5. Special ground 10 of the motion for new trial alleges that the court erred in overruling defendant's motion to strike or rule out the testimony of E. E. Peppers, a police officer and a witness for the State. His motion was: "Your Honor please, I would like to make a motion to strike all of Capt. Peppers' testimony on this occasion because he has been allowed to sit here at the counsel table and hear all of the witnesses testify and has testified himself and has heard all of the State's evidence and has not been properly sequestered and we have been denied our constitutional rights by the State of Georgia to allow him to testify and after he has heard everybody else testify and I make a motion to strike out his testimony from the record on the constitutional grounds that we have been denied the proper sequestration of the witness." Special ground .10 of the motion for new trial does not allege that movant invoked the rule of sequestration and that the court refused to enforce it as to the witness Peppers or any other witness for the State. And since the record fails to show that the accused invoked the sequestration rule provided for by *Code* § 38-1703, this ground of the motion does not require a reversal of the judgment refusing a new trial. The burden is on him who asserts error to show it affirmatively by the record. *Campbell v. Powell*,

206 Ga. 768, 770 (3) (58 SE2d 829). There is a presumption that the judge would have enforced the sequestration rule had it been invoked. *Hamilton v. Smith,* 216 Ga. 345 (116 SE2d 565).

6. Special ground 11 alleges that the court erred in overruling defendant's motion for a mistrial based on the following occurrence: After the accused had concluded his unsworn statement to the jury, the solicitor general asked the court: "Do I get to cross examine him?" Movant contends that such question was prejudicial and harmful to him because it conveyed the impression to the jury that he was refusing to be cross examined. There is no merit in this ground of the motion. There is also no merit in special ground 12 which alleges that the court erred in failing to charge the jury that part of *Code Ann.* § 38-415 which declares that, "The prisoner shall not be compelled to answer any questions on cross-examination, should he think proper to decline to answer." The accused was not cross examined.

7. In his charge the judge gave the following instruction: "The defendant has the right to make to the court and jury such statement in his own defense as he may deem proper. The defendant's statement is not under oath and it shall have such force only as the jury may think right to give it." He also instructed the jury: "The term 'hypothesis' as used in this connection refers to and means such reasonable inferences as are ordinarily drawn by ordinary men in the light of their experience in every-day life." The amended motion for new trial assigns error on these two excerpts from the charge. Since neither excerpt is erroneous, they afford no ground for reversing the judgment refusing to grant a new trial.

8. While the jury was deliberating this case, it came back to the courtroom and the foreman asked the judge what consideration should be given the testimony of Sammy Farmer, an accomplice who had testified for the State. He said: "Now, Gentlemen, you should give it such weight and credit as I charged you in the entire charge which was given you, you should receive his testimony as you would any other evidence in the case and give it such weight and credit under the instructions which the court has given you." Special ground 14 alleges that the jury's request for further instruction respecting its consideration of Sammy Farmer's testimony (the testimony of an alleged accomplice) made it incumbent on the

court to recharge the jury the law relative to an accomplice's testimony in toto. Since there is no contention that the court had not already charged the jury correctly and fully on this subject, there is clearly no merit in this special ground of the motion.

9. For the reasons stated in the preceding divisions of this opinion, the judgment complained of is not erroneous.

*Judgment affirmed. All the Justices concur, except Quillian and Grice, JJ., who dissent from the ruling in Division 4 and from the judgment of affirmance.*

ARGUED JULY 13, 1965—DECIDED SEPTEMBER 9, 1965— REHEARING DENIED SEPTEMBER 22, 1965.

*Larry Cohran*, for plaintiff in error.

*Albert B. Wallace, Solicitor General, Charles J. Driebe, Arthur K. Bolton, Attorney General, Rubye G. Jackson, Assistant Attorney General*, contra.

On the trial, the State's evidence and the defendant's statement, in substance show:

Sammy R. Farmer testified that he lived in Itala, Alabama; that he got into an automobile with Charles Stephens, O'Neal Williams, James Kilgore and Charles Waldrop in Itala, Alabama, and sat in the rear seat between Kilgore and Waldrop; that they told him that they had a job to do in Georgia which they could not do because they were too well known; that he moved forward on the seat and started to get out of the car but Waldrop put his hand on the armrest of the door and told him to come on to Georgia with them and if he did not want to go through with the job, they would see that he got back home; that just before they arrived in College Park, the others told him the job involved was the Harris Supermarket and that he would be with Kilgore; that they drove by the supermarket about 4:30 or 5 p.m. and Stephens told them how the robbery would be committed and how they would make their getaway; that they went to an apartment at 710 E. Columbia Avenue where they all sat down and began to "stage" the crime and the plans agreed on were for him and Kilgore to do the actual robbery and that Williams, Stephens and Waldrop were to be

in the second car; that he and Kilgore were to enter the front of the store at which time Williams, Stephens and Waldrop were to go to a church and wait for them; that they had two special coats, two special hats and two pistols for use in committing the robbery; that on Thursday they went to the supermarket about 9 p.m. but it was closed and for that reason they did not rob it; that the next morning they were all at the apartment and decided to go back to the supermarket and rob it; that Friday night he and Kilgore left in one car, and Williams, Waldrop and Stephens left in the other; that they arrived at the supermarket 3 to 5 minutes before closing time and waited to see whether the money had been taken out of the cash register and if the safe was opened but the robbery was not perpetrated that night; that Waldrop did not stay at the apartment with them Friday night; that Saturday morning Kilgore woke him and told him he would soon have his pockets full of money and be headed back toward Alabama; that when they got outside the apartment, he told Stephens he was not going through with the robbery and Williams got in the car with Kilgore and he was told to drive the other car; that at Stephens' direction he drove to a place where they could see the front door of the supermarket and saw Kilgore and Williams enter the door thereof and then they drove to a place just back of a church and Stephens directed him to stop; that later Kilgore and Williams stepped out from behind some bushes and got in the car; that they had a brown bag with them and wore the hats and coats identified by the employees of the supermarket as those worn by the robbers; that all five of them then went to the apartment where the money was counted and divided into five separate parts but that he did not see Waldrop get any of it.

Captain E. E. Peppers and Detective Samuel M. Gadsden who are employed by the College Park Police Department testified that they had had Apartments 29 and 31 at 710 E. Columbia Avenue under surveillance for about 10 days immediately before the commission of the robbery; that on Thursday about 9 p.m., two days before the robbery, they saw the defendant Waldrop outside the apartment with Charles Stephens, Sammy R. Farmer, O'Neal Williams and James Kilgore; that two of

them had on overcoats and hats and their hands were in their pockets; that they arrested Waldrop and his four companions in the apartment about 4 to 4:30 p.m. on the day of the robbery; that in the same apartment they seized two money bags, two pistols, the two identified coats and some change; and that a pistol was recovered from the trunk of Stephens' Cadillac.

Employees of the supermarket identified O'Neal Williams and Jack Kilgore as the perpetrators of the robbery and identified the overcoats, hats and pistols used in the robbery and which were recovered from the apartment at which they were staying by the police officers at the time of their arrests.

In his unsworn statement to the jury the defendant said that Stephens came to his home in Tallapoosa, Ga., and had some liquor; that he asked him to go to Alabama with them; that they went to Itala, Ala., and got Sammy R. Farmer; that Farmer, Stephens, Kilgore, Williams and himself all came back to Atlanta to an apartment at 710 E. Columbia Avenue; that some women were there and they were drinking and having a party; that he stayed there a couple of days about half drunk; that when Stephens would invite him to ride around, he would go with them; that he was always in the car and on Saturday morning, after they had all been drinking the night before, they drove somewhere over the railroad track but that he was passed out in the back seat; that they came back to the apartment and he lay on a sofa and later went to the door and saw the other four counting money; that they tried to give him some, "I guess for riding in the car with them and when I found out what happened, I wouldn't have accepted it, because I am not a robber" but he later specifically said he did not accept any of the money.

GRICE, Justice, dissenting. I respectfully dissent from Division 4, which holds that the motion for mistrial was properly denied because defendant's counsel did not at that time also move to have the witness's answer complained of excluded from evidence. I know of no principle of law which requires such a motion by the defendant as a prerequisite to the grant of a mistrial where, as here, a witness for the State gave unsolicited

testimony which put the defendant's character in issue. The two cases relied upon do not so hold.

I am authorized to state that Mr. Justice Quillian joins in this dissent.